HIGH OL' TIMES, INC., Atlantis Distributing Inc., et al., Plaintiffs-Appellees,

v.

George BUSBEE, Governor of Georgia, Arthur K. Bolton, Attorney General of Georgia, et al., Defendants-Appellants.

No. 81–7019.

United States Court of Appeals, Eleventh Circuit.

April 23, 1982.

W. Bruce Maloy, Reber Boult, Atlanta, Ga., for plaintiffs-appellees.

Laughlin McDonald, Atlanta, Ga., for amicus curiae American Civ. Liberties Union, Southern Regional Office.

George Weaver, Atlanta, Ga., for H. McAuliffe.

Daryl Robinson, G. Stephen Parker, Atlanta, Ga., George Dillard, County Atty., DeKalb County, Decatur, Ga., for Busbee, Bolton, McAuliffe and Johnston.

Before THORNBERRY *, FAY and HATCHETT, Circuit Judges.

* Honorable Homer Thornberry, U. S. Circuit Judge for the Fifth Circuit, sitting by designation.

HATCHETT, Circuit Judge:

This appeal involves a pre-enforcement challenge to the constitutionality of two Georgia "head shop" laws, Ga.Code §§ 79A–811.1 (1980) and 79A–811.1 (1978) (repealed 1980). Appellants are local and state officials charged with enforcing and executing the laws of Georgia. Appellees (hereinafter Georgia Merchants), are wholesale distributors to and retail merchants of small shops selling various "novelty items," including ornate pipes, rolling papers, screens, testing kits, clips, small spoons, and other accessories. In this suit brought by Georgia Merchants, the District Court for the Northern District of Georgia declared the language "drug related objects" unconstitutionally vague as used in defining the term "drug paraphernalia" and thereby invalidated the 1978 version in its entirety as well as portions of the 1980 law.[1] We reverse.

## I. BACKGROUND

### A. *Proceedings Below*

Georgia Merchants brought this civil rights action seeking declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 on the grounds that these two Georgia criminal statutes are facially unconstitutional under the U.S. Const. art. I, § 8, cl. 3 (commerce clause); art. I, § 9, cl. 3 (bill of attainder); art. VI, cl. 2 (supremacy clause); and the fifth and fourteenth amendments (due process, equal protection). The district court abstained from ruling on the validity of these state laws pending an authoritative interpretation of the statutes by the Georgia Supreme Court. *High Ol' Times, Inc. v. Busbee*, 449 F.Supp. 364 (N.D.Ga.1978). The Fifth Circuit reversed the abstention order and remanded for further proceedings. *High Ol' Times, Inc. v. Busbee*, 621 F.2d 135 (5th Cir. 1980). On the parties' cross motions for summary judgment, the district court ruled in favor of Georgia Merchants, declaring Ga.Code §§ 79A–811.1(1) and (2) (1980) and 79A–811.1 (1978) (re-

pealed 1980) facially unconstitutional. 515 F.Supp. 176 (N.D.Ga.1980). The court, however, denied Georgia Merchants' request for injunctive relief.

### B. *Issues on Appeal*

We must determine whether the district court (1) properly addressed the facial rather than the applied constitutionality of Georgia's drug paraphernalia laws; and (2) correctly declared said statutes unconstitutionally vague due to lack of explicit standards for enforcement.

### C. *The Drug Related Paraphernalia Laws*

A growing concern among Georgia lawmakers that drug paraphernalia sold in "head shops" facilitate or advocate the use of marijuana and other controlled substances led to the enactment of several statutes which amended the Georgia Controlled Substances Act and the Criminal Code of Georgia. Two of these laws are the subject of the instant appeal. Georgia Code § 79A–811.1 (1978) (repealed 1980), makes it a misdemeanor to sell, exchange, or offer any "drug related object" to anyone and defines this term as an item "primarily intended" for use with illicit drugs. *See* Appendix A (setting forth pertinent portions of 1978 statute). The 1980 version, however, defines "drug related object" as any item which is "designed or marketed as useful primarily for" use with controlled substances. *See* Appendix B (reprinting, in part, text of 1980 statute).

## II. APPLIED v. FACIAL ATTACK

Appellants (the state) argue that the district court erred in addressing the "facial" validity rather than the "as applied" constitutionality of the Georgia statutes. The state relies on the traditional rule of standing set forth in *United States v. Raines*, 362 U.S. 17, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960), that a person to whom application of a statute is constitutional may not attack that statute on the ground that it conceivably may be applied unconstitutionally to

---

1. The district court also invalidated Ga.Code § 26–9913 restricting the sale or distribution of drug paraphernalia to minors. Subsection (a)(4) defined "drug related object" to mean

any item which "an average person would reasonably conclude is intended to be used" with drugs. Appellants do not challenge the propriety of this ruling on appeal.

other persons or other situations. 362 U.S. at 21, *cited in Broadrick v. Oklahoma*, 413 U.S. 601, 610–11, 93 S.Ct. 2908, 2914–15, 37 L.Ed.2d 830 (1973). Georgia Merchants, however, support the court's facial analysis of their pre-enforcement challenge because the due process clause grants them the right not to daily face the risk of criminal prosecution on the basis of a vague statute for continuing to conduct their business.

■ A statute is facially vague in violation of due process only when the law is impermissibly vague in all of its applications. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, —— U.S. ——, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982). Facial vagueness occurs when a statute is utterly devoid of a standard of conduct so that it "simply has no core" and cannot be validly applied to any conduct. *United States v. Powell*, 423 U.S. 87, 92, 96 S.Ct. 316, 319, 46 L.Ed.2d 228 (1975); *Smith v. Goguen*, 415 U.S. 566, 578, 94 S.Ct. 1242, 1249, 39 L.Ed.2d 605 (1974); *Coates v. City of Cincinnati*, 402 U.S. 611, 614, 91 S.Ct. 1686, 1688, 29 L.Ed.2d 214 (1971). On the other hand, if persons of reasonable intelligence can derive a core meaning from a statute, then the enactment may validly be applied to conduct within that meaning and the possibility of a valid application necessarily precludes facial invalidity. *Brache v. County of Westchester*, 658 F.2d 47, 51 (2d Cir. 1981), *cert. denied*, —— U.S. ——, 102 S.Ct. 1643, 71 L.Ed.2d 874 (1982).

Moreover, the recent United States Supreme Court decision in *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, —— U.S. ——, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982), supports the state's contention that the possibility of a valid application necessarily obviates facial vagueness. The Court stated:

> The court should ... examine the facial vagueness challenge and, assuming the enactment implicates no constitutionally protected conduct, should uphold the challenge only if the enactment is impermissibly vague in *all* of its applications. A plaintiff who engages in *some* conduct that is *clearly* proscribed cannot complain

of the vagueness of the law as applied to the conduct of others. A court should therefore examine the complainant's conduct before analyzing other hypothetical applications of the law.

—— U.S. at ——, 102 S.Ct. at 1191 (footnote omitted) (emphasis added).

■ Indeed, the district court in the instant case stated "there are some objects which *clearly* fall within the statutory definition." *High Ol' Times*, 515 F.Supp. at 180–81 (emphasis added). Nevertheless, the court went on to state that "there is also a substantial marginal grey area where persons of ordinary intelligence would differ as to what items are proscribed." 515 F.Supp. at 181. The district court dismissed the applicability of the *Raines* holding, stating:

> [T]he issue before the [*Raines*] Court was one of standing: a court may not assess the constitutionality of a statute in a purely hypothetical case. We can imagine no situation in which a law, unconstitutional on its face, may be saved by a showing that law enforcement officers had in several instances enforced the law in a constitutional manner.

515 F.Supp. at 180 n.2. The district court's analysis must fail for refuting the well-established principle that the possibility of constitutional application to some of the conduct in which the Georgia Merchants are engaged necessarily precludes a finding of facial vagueness. By noting that the statutes apply to some of the objects sold by Georgia Merchants, the district court necessarily declared the statutes void for vagueness because they were unclear in some of their applications. The proper analysis requires the district court to consider only whether the laws are vague in all of their applications. *Flipside*, —— U.S. at ——, 102 S.Ct. at 1191.

### III. VAGUENESS

■ The United States Supreme Court established a two-tier test for evaluating vagueness in *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972):

Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application.

408 U.S. at 108–09, 92 S.Ct. at 2298–99 (footnotes omitted). When a criminal statute is involved, "[n]o one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids." *Lanzetta v. New Jersey*, 306 U.S. 451, 453, 59 S.Ct. 618, 619, 83 L.Ed. 888 (1939) (footnote omitted). Although the Constitution tolerates a lesser degree of vagueness in enactments with criminal rather than civil penalties, we recognize that absolute precision in drafting laws is not demanded. *Flipside*, —— U.S. at ——, 102 S.Ct. at 1193; *Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337, 340, 72 S.Ct. 329, 330, 96 L.Ed. 367 (1952). All the due process clause requires is fair notice by providing "an ascertainable standard of guilt" sufficient to enable persons of ordinary intelligence to avoid conduct which the law forbids. *Rose v. Locke*, 423 U.S. 48, 50, 96 S.Ct. 243, 244, 46 L.Ed.2d 185 (1975); *Winters v. New York*, 333 U.S. 507, 68 S.Ct. 665, 92 L.Ed. 840 (1948).

 Furthermore, a court may cure a law's vagueness by statutory interpretation. The Supreme Court has held that the inclusion of a specific mens rea element may alleviate a law's vagueness with respect to providing fair notice to the accused that certain conduct is prohibited. *Colautti v. Franklin*, 439 U.S. 379, 395 & n.13, 99 S.Ct. 675, 685 & n.13, 58 L.Ed.2d 596 (1979);

*Screws v. United States*, 325 U.S. 91, 101–03, 65 S.Ct. 1031, 1035–36, 89 L.Ed. 1495 (1943) (plurality opinion). Moreover, if a law is susceptible of an interpretation which supports its constitutionality, the court must accord the law such meaning. *Screws*, 325 U.S. at 98, 65 S.Ct. at 1033. Where a statute does not define a term, a court must also give words their common and ordinary meaning, absent some established technical definition, unless the legislature intended otherwise. *Flipside*, —— U.S. at —— n.18, 102 S.Ct. at 1194 n.18; *Flipside*, 485 F.Supp. at 406 (citing *Schreibman v. L. I. Combs & Sons, Inc.*, 337 F.2d 410, 412 (7th Cir. 1964)). Applying these principles of constitutional law and rules of statutory construction, we examine the Georgia statutes at issue.

### A. Fair Notice

The critical language upon which the district court focused its analysis appears in the definition of "drug related" in both statutes. Ga.Code §§ 79A–811.1(1) (1980) and 79A–811.1(a) (1978) (repealed 1980). The court, however, did not decide whether the respective provisions of section 79A–811.1 give fair notice of the prohibited conduct, but solely declared the statutes impermissibly vague for lack of ascertainable enforcement guidelines under the second prong of the *Grayned* test.

#### 1. The 1978 Statute

The operative language of the 1978 section on which we concentrate defines "drug related" as any object which is "primarily intended" for use with illicit drugs. Ga. Code § 79A–811.1(a) (1978) (repealed 1980). The district court characterized the ambiguity inherent in the phrase "primarily intended" as establishing "transferred intent" because an innocent person may be convicted for the unlawful intent of anyone—the inventor, designer, manufacturer, wholesaler, retailer, or purchaser. The state urges this court, as they did the district court, to adopt a saving construction which would superimpose a requirement of proof of the intent of the transferor. We realize that

both the district court and the Fifth Circuit in this case expressed serious reservations as to whether such a limiting construction would eliminate the vagaries of the statute. 621 F.2d at 140 n.5; 515 F.Supp. at 185.

■ In construing a statute, the courts consider legislative intent. *United States v. Balint*, 258 U.S. 250, 42 S.Ct. 301, 66 L.Ed. 604 (1922). Because it is solely within the province of state courts to authoritatively construe state legislation, *United States v. Thirty-Seven Photographs*, 402 U.S. 363, 369, 91 S.Ct. 1400, 1404, 28 L.Ed.2d 822 (1971), in the absence of an interpretation by these courts, we must "extrapolate [the statute's] allowable meaning ... in a manner that affords the widest latitude to state legislative power consistent with the United States Constitution." *Garner v. Louisiana*, 368 U.S. 157, 174, 82 S.Ct. 248, 257, 7 L.Ed.2d 207 (Frankfurter, J., concurring). In so doing, we may rely on the language of the statute itself. *Grayned*, 408 U.S. at 110, 92 S.Ct. at 2299.

■ A fair reading of the 1978 statute as a whole indicates that the intent referred to in subsection (a) is that of the transferor. Thus, subsection (b) provides:

> It shall be unlawful for any person ('transferor') to sell, offer to sell, exchange, or offer to exchange any drug-related object to any person but one whom the transferor knows to be authorized by law to possess or have under his control marijuana or a controlled substance for which the object is primarily intended to be used.

In defining the substantive offense, section (b) thus provides the needed clarity by linking the requirement of intent with the categories of persons whose conduct falls within the reach of the legislation. Only a "transferor" of a drug-related object may be convicted under this provision. The interpretation that "primarily intended" refers to the transferor's intent is further bolstered by the exception to criminal liability when the transferor knows the transferee is legally authorized to possess controlled substances.

Similarly, other courts have construed "intended for use" language in the definition of "drug paraphernalia" to refer to the intent of persons charged with violating the act. *E.g., The Casbah, Inc. v. Thone*, 651 F.2d 551, 559 (8th Cir. 1981), *cert. denied*, —— U.S. ——, 102 S.Ct. 1642, 71 L.Ed.2d 874 (1982); *Record Revolution No. 6, Inc. v. City of Parma*, 638 F.2d 916, 928 & n.14 (6th Cir. 1980), *vacated and remanded*, 451 U.S. 103, 101 S.Ct. 2998, 69 L.Ed.2d 384 (1981); *Delaware Accessories Trade Association v. Gebelein*, 497 F.Supp. 289, 292–93 (D.Del. 1980).

We thus hold that Georgia's 1978 statute adequately defines the mental state required to render an item drug paraphernalia and refers to the intent of the person charged with violating section (b).

### 2. The 1980 Statute

■ The 1980 version of Georgia's drug paraphernalia statute defines a "drug related object" as any object "which is designed or marketed as useful primarily for" use with controlled substances. Ga.Code § 79A–811.1(1) (Supp.1980). Subsection (2), which defines the substantive offenses, also provides a second mens rea requirement:

> It shall be unlawful for any person or corporation, knowing the drug related nature of the object, to ... distribute to any person any drug related object.... 'Knowing' as used herein means either actual or constructive knowledge of the drug related nature of the object, and a person or corporation has constructive knowledge of the drug related nature of the object if he or it has knowledge or facts which would put a reasonable and prudent person on notice of the drug related nature of the object.

Georgia Merchants object that the "designed for use" standard is vague with respect to whether covered items must be suited solely for drug use or may be susceptible of multiple uses, and whether the designer's or marketer's intent is relevant. The state, however, urges this court to construe the "designed for use" standard to refer to the intent of the designer (the inventor or manufacturer), as manifested by the objective physical characteristics of

the item. We agree, noting that the Supreme Court recently endorsed this interpretation in upholding a similar regulatory ordinance involved in *Flipside.* The Court stated:

> It is ... plain that the standard encompasses at least an item that is principally used with illegal drugs by virtue of its objective features, i.e., features designed by the manufacturer. A business person of ordinary intelligence would understand that this term refers to the design of the manufacturer, not the intent of the retailer or customer. It is also sufficiently clear that items which are principally used for nondrug purposes, such as ordinary pipes, are not 'designed for use' with illegal drugs.

—— U.S. at ——, 102 S.Ct. at 1193. The Court also pointed out that the standard is "sufficiently clear to cover at least some of the items that Flipside sold." Although the standard in the instant case does contain ambiguities, the district court conceded that "some objects ... *clearly* fall within the statutory definition." Thus, Georgia Merchants' fair warning challenge must fail.

The state also contends that the "marketed for use" standard requires proof that the retailer intend that certain objects be used for prohibited purposes and that the defendant know of this intent. The *Flipside* Court supported this interpretation in holding that the "marketed for use" standard "is transparently clear: it describes a *retailer's* intentional display and marketing of merchandise.... The standard requires scienter since a retailer can scarcely 'market' items 'for' a particular purpose without intending that use." —— U.S. at ——, 102 S.Ct. at 1196 (emphasis added). The *Flipside* Court noted that the ordinance guidelines which aid in ascertaining a retailer's intent referred to the display of paraphernalia, and to the proximity of covered items to otherwise uncovered items. The Court stated that a retail store fell within the ordinance if it "deliberately displays its wares in a manner that appeals to or encourages illegal drug use." —— U.S. at ——, 102 S.Ct. at 1196. Although similar "guidelines" are absent from the Georgia

statute, the Court's interpretation of such phraseology is instructive.

Unlike the ordinance in *Flipside*, the 1980 Georgia statute imposes an additional requirement of specific intent by requiring that the defendant know that the objects for which he is prosecuted are designed or marketed primarily for use with illicit drugs. To the extent that a specific intent requirement may mitigate vagueness, the Georgia statute is even less vague than the *Flipside* ordinance.

### B. Enforcement Standards

■ The district court declared the 1978 statute and subsections (1) and (2) of the 1980 version of section 79A–811.1 impermissibly vague on their face for lack of explicit standards for enforcement. The state urges this court to find that no genuine issue of material fact existed as to whether the statutes had been or were being constitutionally applied. In reviewing the Georgia statute for facial vagueness, however, the trial court's principal focus was on whether the drug paraphernalia enactments provided fair warning of what was proscribed. Thus, the court did not consider evidence indicating whether the statutes had been enforced in a discriminatory manner.

*Flipside* teaches that regardless of the risk of discriminatory enforcement, a court may not hold that this risk invalidates the statute in a pre-enforcement facial attack. Such a claim takes on due process dimensions only when the "possibility ripens into a prosecution." *Flipside*, —— U.S. at —— n.21, 102 S.Ct. at 1196 n.21. Georgia Merchants may attempt to demonstrate that the statutes are being unconstitutionally enforced in a post-enforcement proceeding. —— U.S. at —— n.22, 102 S.Ct. at 1196 n.22.

Moreover, as noted above, the 1978 and 1980 Georgia drug paraphernalia laws are sufficiently clear in giving fair warning as to what is prohibited. " '[T]he [statutory language] defines boundaries sufficiently distinct' for citizens, policemen, juries, and appellate judges." *Grayned*, 408 U.S. at

114, 92 S.Ct. at 2302 (citing *Chicago v. Fort,* 46 Ill.2d 12, 16, 262 N.E.2d 473, 476 (1970)) (footnote omitted). Thus, the statute is not rendered vague by the speculative danger of arbitrary enforcement.

We also do not assume that the State of Georgia will take no further steps to minimize the spectre of discriminatory application of the law. The state may promulgate guidelines, similar to those found in the Model Drug Paraphernalia Act drafted by the Drug Enforcement Administration of the United States Department of Justice, which will adequately narrow potentially arbitrary applications of the statutes.[2] "Although it is possible that specific future applications ... may engender concrete problems of constitutional dimension, it will be time enough to consider any such problems when they arise." *Flipside,* — U.S. at ——, 102 S.Ct. at 1196 (quoting *Seagram & Sons v. Hostetter,* 384 U.S. 35, 52, 86 S.Ct. 1254, 1264, 16 L.Ed.2d 336 (1966)).

## CONCLUSION

Because the 1978 and 1980 head shop laws may constitutionally be applied to certain items sold by appellees which fall within the statutes' definition of "drug paraphernalia," we reverse the district court. We also hold that (1) the definition of "drug related object" in the 1978 and 1980 versions of Georgia's "head shop" law provides adequate notice of persons covered and conduct proscribed, and (2) the language in both statutes is sufficiently clear that the possibility of arbitrary and discriminatory application does not render them void for vagueness in this pre-enforcement facial challenge.

REVERSED.

## APPENDIX A

Ga.Code § 79A–811.1 (1978) (repealed 1980) provides in pertinent part:

(a) 'Drug-related object' means any instrument, device, or object which is primarily intended for one or more of the following purposes:

(1) To inject, ingest, inhale, or otherwise introduce into the human body marijuana or controlled substance;

(2) To enhance the effect on the human body of marijuana or a controlled substance;

(3) To test the strength, effectiveness, or purity of marijuana or a controlled substance.

(b) It shall be unlawful for any person ('transferor') to sell, offer to sell, exchange, or offer to exchange any drug-re-

**2.** The Model Drug Paraphernalia Act (1979) contains a nonexclusive list of guidelines to aid authorities in determining whether an object falls within the definition of "drug paraphernalia." Article I provides, in pertinent part:

In determining whether an object is Drug paraphernalia, a court or other authority should consider, in addition to all other logically relevant factors, the following:

(1) Statements by an owner or by anyone in control of the object concerning its use;

(2) Prior convictions, if any, of an owner, or of anyone in control of the object, under any State or Federal law relating to any controlled substance;

(3) The proximity of the object, in time and space, to a direct violation of this Act;

(4) The proximity of the object to controlled substances;

(5) The existence of any residue of controlled substances on the object;

(6) Direct or circumstantial evidence of the intent of an owner, or of anyone in control of the object, to deliver it to persons whom he knows, or should reasonably know, intend to use the object to facilitate a violation of this Act; the innocence of an owner, or of anyone in control of the object, as to a direct violation of this Act shall not prevent a finding that the object is intended for use, or designed for use as Drug paraphernalia;

(7) Instructions, oral or written, provided with the object concerning its use;

(8) Descriptive materials accompanying the object which explain or depict its use;

(9) National and local advertising concerning its use;

(10) The manner in which the object is displayed for sale;

(11) Whether the owner, or anyone in control of the object, is a legitimate supplier of like or related items to the community, such as a licensed distributor or dealer of tobacco products;

(12) Direct or circumstantial evidence of the ratio of sales of the object(s) to the total sales of the business enterprise;

(13) The existence and scope of legitimate uses for the object in the community;

(14) Expert testimony concerning its use.

lated object to any person but one whom the transferor knows to be authorized by law to possess or have under his control marijuana or a controlled substance for which the object is primarily intended to be used.

(c) Any person who shall violate any provision of this Section shall be guilty of a misdemeanor and, upon conviction thereof, shall be punished as for a misdemeanor.

## APPENDIX B

Ga.Code § 79A–811.1 (1980) provides, in pertinent part:

(1) "Drug related object" means any instrument, device, or object which is designed or marketed as useful primarily for one or more of the following purposes:

(A) To inject, ingest, inhale, or otherwise introduce into the human body marijuana or a controlled substance;

(B) To enhance the effect on the human body of marijuana or a controlled substance;

(C) To test the strength, effectiveness, or purity of marijuana or a controlled substance;

(D) To process or prepare for introduction into the human body marijuana or a controlled substance;

(E) To conceal any quantity of marijuana or a controlled substance;

(F) To contain or hold marijuana or a controlled substance while it is being introduced into the human body.

(2) It shall be unlawful for any person or corporation, knowing the drug related nature of the object, to sell, lend, rent, lease, give, exchange, or otherwise distribute to any person any drug related object. It shall also be unlawful for any person or corporation, knowing the drug related nature of the object, to display for sale, or possess with the intent to distribute, any drug related object. Unless stated within the body of the advertisement or notice that the object that is advertised or about which information is disseminated is not available for distribution of any sort in Georgia, it shall be unlawful for any person or corporation, knowing the drug related nature of the object, to distribute or disseminate in any manner to any person any advertisement of any kind or notice of any kind which gives information, directly or indirectly, on where, or how, or from whom, or by what means any drug related object may be obtained or made. "Knowing" as used herein means either actual or constructive knowledge of the drug related nature of the object, and a person or corporation has constructive knowledge of the drug related nature of the object if he or it has knowledge of facts which would put a reasonable and prudent person on notice of the drug related nature of the object.

(4) For a first offense, any person or corporation which shall violate any provision of this section shall be guilty of a misdemeanor and, upon conviction, shall be punished as for a misdemeanor. For a second offense, the defendant shall be guilty of a misdemeanor of a high and aggravated nature and, upon conviction, shall be punished as for a misdemeanor of a high and aggravated nature. For a third or subsequent offense, the defendant shall be guilty of a felony and shall, upon conviction, be imprisoned for not less than one year nor more than five years and shall be fined not more than $5,000.

(6) Should any part or provision of this section be declared by a court of competent jurisdiction to be invalid or unconstitutional, such decision shall not affect the validity of the section as a whole nor any part thereof other than the part so declared to be invalid or unconstitutional.