706 F.2d 782
 NOVA RECORDS, INC., an Indiana corporation, et al.,
Plaintiffs-Appellants,
v.
Theodore L. SENDAK, Individually and in his official
capacity as Attorney General of the State of
Indiana, et al., Defendants-Appellees.
 No. 81-1107.
 United States Court of Appeals,
Seventh Circuit.
 April 15, 1983.
Rehearing and Rehearing En Banc Denied May 26, 1983.
As Amended April 15, 1983.
 
 Michael L. Pritzker, Stroup, Goldstein, Jenkins & Pritzker, Chicago, Ill., for plaintiffs-appellants.
 David Michael Wallman, Deputy Atty. Gen., Indianapolis, Ind., for defendants-appellees.
 Before PELL and CUDAHY, Circuit Judges, and BARTELS, Senior District Judge.*
 PELL, Circuit Judge.
 
 
 1
 The plaintiffs, who are Indiana tobacco and snuff accessories retailers, appeal from the district court's decision, following a full hearing, that Indiana's drug paraphernalia statute is facially constitutional. The primary issue on appeal is whether the statute is violative of due process because of its alleged vagueness. The appellants also claim that the statute is violative of the First Amendment.
 
 I. BACKGROUND
 A. Predecessors of the Indiana Statute
 
 2
 Indiana House Enrolled Act 1468 (codified as Ind.Code Secs. 16-6-8.5-5, 35-48-4-8.1, 35-48-4-8.2, 35-48-4-8.3 (Supp.1980)) (HEA 1468 or Indiana statute) represents the State's third attempt to regulate drug paraphernalia. The first provision, enacted in 1975, was repealed after one member of a three-judge panel convened to judge the constitutionality of the law issued a temporary restraining order against its enforcement.
 
 
 3
 In 1977, the legislature enacted another statute which was quite similar to that previously repealed. Both the 1975 and 1977 statutes included a non-exclusive list of items deemed to be per se "paraphernalia." In February, 1980, a three-judge panel issued a declaratory judgment that the 1977 statute was unconstitutionally vague and overbroad. Indiana Chapter NORML v. Sendak, No. TH 75-142-C (S.D.Ind.1980) (NORML ). On March 3, 1980, Governor Bowen signed HEA 1468 into law. HEA 1468 expressly repealed the 1977 statute and became effective on April 30, 1980. As a result of the repeal, the defendants' appeal regarding the 1977 statute was dismissed for mootness by this court in 1980.
 
 B. Provisions of the Challenged Statute
 
 4
 The Indiana statutory provisions challenged on this appeal deal with the manufacture and possession of drug paraphernalia, dealing in or delivery of paraphernalia, and provide for forfeiture of a broad class of items, the use of which is related to violations of Indiana controlled substances law. Ind.code Secs. 16-6-8.5-5, 35-48-4-8.1, 35-48-4-8.2, 35-48-4-8.3 (supp.1980). Although the Indiana statute reportedly was patterned on the same provisions that provided the basis for the Model Drug Paraphernalia Act (Model Act) drafted by the Drug Enforcement Administration of the United States Department of Justice, the Indiana law differs from the model legislation.[1] HEA 1468 has no separate definitional section but does incorporate a scienter requirement into the substantive provisions. It lacks any illustrative examples of prohibited items as well as factors to be considered in determining whether an object is included under the statutory prohibition.
 
 
 5
 Turning initially to the substantive sections of the Indiana statute, the first deals with the manufacture or design of paraphernalia:
 
 
 6
 A person who knowingly or intentionally manufactures or designs an instrument, device, or other object that he intends to be used primarily for:
 
 
 7
 (1) introducing into the human body a controlled substance;
 
 
 8
 (2) testing the strength, effectiveness, or purity of a controlled substance, or
 
 
 9
 (3) enhancing the effect of a controlled substance
 
 
 10
 in violation of this chapter, commits manufacture of paraphernalia, a Class D felony.
 
 
 11
 Id. Sec. 35-48-4-8.1. The following section, which prohibits dealing in paraphernalia, id. Sec. 35-48-4-8.2, differs from the manufacturing section quoted supra only in that the operative word is "delivers" rather than "manufactures or designs."
 
 
 12
 The third of the substantive offense sections prohibits possession of paraphernalia. It follows the same pattern as the two prior sections. It refers to "a person who possesses a raw material, instrument, device, or other object that he intends to use for" and then recites the "introducing ..., testing ..., enhancing" litany quoted above. Id. Sec. 35-48-4-8.3. Possession of paraphernalia, like manufacture and dealing, is generally a Class D felony. Section 35-48-4-8.3(b) provides, however, that it is a Class A misdemeanor if the violator intends to use the "raw material, instrument, device, or other object ... with marijuana, hash oil, or hashish" and has no prior conviction involving those substances.
 
 
 13
 Under Indiana law, Class D felonies are punishable by imprisonment for a fixed term of two years and a fine of up to ten thousand dollars. Two additional years of imprisonment are possible if aggravated circumstances exist. Id. Sec. 35-50-2-7. A Class A misdemeanor is punishable by imprisonment for a fixed term of not more than one year and a fine of up to five thousand dollars. Id. Sec. 35-50-3-2.
 
 
 14
 The forfeiture section provides for forfeiture of the following:
 
 
 15
 (1) All controlled substances with respect to which there has been any violation of controlled substances law;
 
 
 16
 (2) "[R]aw materials, instruments, devices and other objects that are used, or intended for use by the person in possession of them," in violating the controlled substances law;
 
 
 17
 (3) Any containers for property described in clauses (1) and (2), supra;
 
 
 18
 (4) All conveyances, including vehicles, used to facilitate the transportation or concealment of property described in clauses (1) and (2);
 
 
 19
 (5) Books, records, and other materials "used or intended for use by the person in possession of them" in violation of a law relating to controlled substances. Id. Sec. 16-6-8.5-5(a).
 
 
 20
 Subsection (b) of the forfeiture provision provides that the property enumerated in subsection (a) is subject to forfeiture upon court process. The subsection also provides that seizure without process may be made if one of four conditions is met. The condition most relevant to this appeal is that property is subject to seizure incident to an arrest made pursuant to the statute.
 
 C. The Plaintiffs
 
 21
 The plaintiffs operate retail businesses in Indiana. Prior to the effective date of HEA 1468, the plaintiffs displayed and offered for sale the following: records, recording tapes, stereo equipment, clothing, jewelry, leather goods, snuff products and accessories, and tobacco goods and accessories. Included in their inventories were water pipes, "bong" pipes, chamber pipes, glass, ceramic and wood pipes. They assert that each item in their inventory had a recognized and established legal use; further, the plaintiffs state that they did not display or merchandise their inventory in such a way as to encourage any illegal activity.
 
 
 22
 Before enforcement of HEA 1468 commenced, the plaintiffs removed a variety of merchandise, including some literature, from their shelves. The retailers assert that the purpose of removing articles from display was to preclude any possibility of being charged under the statute, thereby losing the right to challenge its facial constitutionality.
 
 D. Enforcement of the Statute
 
 23
 Although none of the plaintiffs has been arrested pursuant to the statute, two other arrests have been made. The district court took judicial notice of the facts surrounding these arrests. The circumstances pertinent to the one arrest were as follows. A county deputy prosecutor advised state police that they would be justified in proceeding with a search warrant if they could "show an identifiable relationship between articles sold in the store and similar articles sold by drug users." An officer purchased "one pipe with two bowls and screen" and "one round shaped ceramic cigarette holder." He obtained a search warrant by setting forth the fact of these purchases and characterizing the items as ones "primarily intended" for use with marijuana. Pursuant to the search warrant, a wide variety of merchandise was seized including glass pipes, plexiglas pipes, ceramic pipes, brass pipes, silver and wood pipes, animal horn pipes, water pipes, "bong" water pipes, clips, mirrors and spoons. Articles seized in the second arrest included cigarette papers and rollers, and an assortment of items that depicted marijuana leaves.
 
 E. Proceedings Below
 
 24
 On April 29, 1980, the plaintiffs brought suit against the Indiana Attorney General and prosecuting attorneys for four judicial circuits of the State. The plaintiffs sought a declaratory judgment, injunctive relief, and damages. On May 29, 1980, Judge Noland denied the motion for a temporary injunction. A full hearing was held on July 18, 1980. At that time the district court took judicial notice of the circumstances surrounding the two instances in which HEA 1468 had been enforced, see Section I(D), supra. On December 9, 1980, the district court entered its judgment in favor of the defendants. Following the district court's denial of the plaintiffs' petition for reconsideration, this appeal was taken.
 
 II. FACIAL OR AS-APPLIED CHALLENGE
 
 25
 A preliminary issue is whether this appeal presents a facial challenge, an as-applied challenge, or both, to the Indiana statute. The question is important because Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982), involved only a facial challenge and the Supreme Court accordingly addressed only the standards relevant to a pre-enforcement challenge.
 
 
 26
 The judge below considered the plaintiffs' claim to be one of facial unconstitutionality. At oral argument here, however, counsel for the appellants asserted that the challenge was both facial and as-applied and that both grounds had been urged below.
 
 
 27
 Because the potential application of the statute poses a sufficient risk to the plaintiffs, they have standing to bring a pre-enforcement challenge. E.g., Steffel v. Thompson, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974). The plaintiffs do not, however, have standing to challenge the law as applied. They do not acknowledge that they sell any merchandise subject to the statute. The police have not arrested any individual associated with the plaintiff companies pursuant to the statute. Accordingly, there has been no judicial determination regarding whether the statute prohibits any of the plaintiffs' activities. As a result, there is no case or controversy regarding application of the statute that involves these plaintiffs. The district judge correctly characterized the plaintiffs' challenge to be one of facial constitutionality. Accordingly, this court must apply the standards set forth in Hoffman Estates.
 
 
 28
 It is possible that the plaintiffs' arguments regarding an as-applied challenge are no more than an assertion that this court, like the court below, should acknowledge the pattern of enforcement demonstrated in application of the statute to other parties. Hoffman Estates involved a somewhat analogous situation: testimony by village officials and the police chief as to potential enforcement of the statute was offered and was considered by the Supreme Court in its discussion as to whether the ordinance was subject to arbitrary or discriminatory enforcement. 455 U.S. at 502, 102 S.Ct. at 1195. The course we deem consistent with Hoffman Estates is to consider the evidence regarding the two applications of the statute but not to rely on it so as to alter the standard of review appropriate to a facial challenge.
 
 III. APPLICABLE PRECEDENT
 
 29
 Although we are aware of no previously decided case involving a drug paraphernalia law precisely like that at issue in this case, several decisions of this and other courts are relevant to our analysis. Initially, it is helpful to note the type of legislation and particular legal issues addressed in each opinion.
 
 A. Hoffman Estates
 
 30
 The ordinance at issue in Hoffman Estates was a licensing provision: one who sells "any item, effect, paraphernalia, accessory or thing which is designed or marketed for use with illegal cannabis or drugs, as defined by Illinois Revised Statutes," 455 U.S. at 492, 102 S.Ct. at 1190, is required to obtain a license.[2] Reversing and remanding an opinion of this court, the Supreme Court held that the Hoffman Estates ordinance was facially neither overbroad nor vague.[3]
 
 
 31
 The Hoffman Estates Court set forth the standards relevant to a facial challenge of a drug paraphernalia law. The Court characterized the ordinance as "economic regulation" and indicated that a less strict vagueness test was therefore mandated. Id. at 498, 102 S.Ct. at 1193. The impact of this characterization is less than clear, however, because the Court also indicated that it must apply the more stringent standards relevant to a "quasi-criminal" law. Id. at 499, 102 S.Ct. 1194.
 
 
 32
 Four aspects of Hoffman Estates are most relevant for purposes of this appeal. First, the Court followed the standards for evaluating vagueness enunciated in Grayned v. City of Rockford, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972): one must determine that the law both provides adequate notice of what is prohibited and precludes arbitrary or discriminatory enforcement. 455 U.S. at 498, 102 S.Ct. at 1193. Second, the Court indicated that a scienter requirement may mitigate any vagueness as to what conduct is proscribed. Id. at 499, 102 S.Ct. at 1193-94. Third, the Court was unwilling to assume that the village would fail to clarify further the scope of the ordinance through a consistent enforcement policy or the adoption of further guidelines. Id. at 502, 504, 102 S.Ct. at 1195, 1196. Finally, and most important, the Court stated that a law should be found facially unconstitutional for vagueness only if it is "vague in all of its applications [in the sense that] 'no standard of conduct is specified at all.' " Id. at 497 & n. 7, 102 S.Ct. at 1193 & n. 7 (quoting Coates v. City of Cincinnati, 402 U.S 611, 614, 91 S.Ct. 1686, 1688, 29 L.Ed.2d 214 (1971)).
 
 B. Model Act Cases
 
 33
 A number of courts have held constitutional drug paraphernalia laws patterned closely on the Model Act. E.g., Camille Corp. v. Phares, 705 F.2d 223 (1983) (Camille ); Levas v. Village of Antioch, 684 F.2d 446 (7th Cir.1982) (Antioch ); New England Accessories Trade Association v. City of Nashua, 679 F.2d 1 (1st Cir.1982); Florida Businessmen for Free Enterprise v. City of Hollywood, 673 F.2d 1213 (11th Cir.1982). Contra, Record Revolution No. 6, Inc. v. City of Parma, 638 F.2d 916 (6th Cir.1980), vacated and remanded, 451 U.S. 1013, 101 S.Ct. 2998, 68 L.Ed.2d 384 (1981) (Record Revolution ).[4] Each of the laws at issue in these cases utilized the Model Act's definitional section, which is the section most pertinent to this appeal, with, at most, minor variations. That definitional section consists of three parts. The first characterizes any "equipment, products [or] materials used, intended for use, or designed for use" with controlled substances as drug paraphernalia. The second part consists of a non-exclusive list of examples of drug paraphernalia. Each example reiterates the scienter requirement stated in the first part of the definition. The final portion of the Model Act's definitional section offers a non-exhaustive list of factors to be considered in determining whether an item constitutes drug paraphernalia.
 
 
 34
 Camille and Antioch, the two cases involving variants of the Model Act that have been decided by this court, both involved ordinances stating a general ban, enforced by criminal penalties, on the manufacture and delivery of drug paraphernalia. In those respects, both are analogous to the instant case. Like the Indiana statute, the scope of the prohibitions in the Camille and Antioch ordinances encompassed individuals as well as businesses.
 
 C. Record Head and High Ol' Times
 
 35
 Two other recent cases have involved drug paraphernalia laws that differed significantly from the Model Act. In Record Head Corp. v. Sachen, 682 F.2d 672 (7th Cir.1982) (Record Head ), this court found the West Allis drug paraphernalia ordinance unconstitutionally vague. That ordinance was primarily concerned with the delivery of drug paraphernalia to minors. It provided for criminal penalties and the majority found that individuals as well as businesses were subject to liability.
 
 
 36
 A majority of the court found that the West Allis ordinance failed both to give adequate notice of what conduct was proscribed and to preclude arbitrary enforcement. The court read the ordinance as containing no meaningful scienter requirement, see id. at 677, which distinguished it from the ordinance at issue in Antioch.[5] The court also relied heavily on the fact that the factors to be considered in determining whether an item was classifiable as drug paraphernalia invited inquiry into areas of doubtful relevance. Id.
 
 
 37
 In High Ol' Times, Inc. v. Busbee, 673 F.2d 1225 (11th Cir.1982), the Eleventh Circuit found the 1978 and 1980 versions of the Georgia drug paraphernalia statute constitutional. The scope of the statutes included individuals as well as businesses. The principal relevance of High Ol' Times to the instant appeal is that the Georgia statutes provide neither a list of examples nor factors to be considered in determining whether an item should be characterized as a "drug related object" subject to the statutes. By contrast, all of the Model Act variants contain both examples and factors, see Section III(B), supra.
 
 IV. FIRST AMENDMENT
 
 38
 Before turning to the appellants' claim that the Indiana statute is unconstitutionally vague, we address their argument that the statute encompasses conduct protected by the First Amendment. Because the substantive sections of the statute reach only items intended for introducing a controlled substance into the body, testing the strength, effectiveness, or purity of a controlled substance, or enhancing the effect of a controlled substance, their prohibitions clearly do not impinge upon any First Amendment values. See Ind.Code Secs. 35-48-4-8.1--8.3 (Supp.1980).
 
 
 39
 The appellants' concern must therefore be with the forfeiture provisions which permit seizure of, inter alia, books and literature and containers for controlled substances. Id. Sec. 16-6-8.5-5(a)(3), (5). The appellants foresee the seizure of literature advocating drug usage and refer to the seizure, during one of the previous applications of the Indiana statute, of cigarette cases that display a marijuana leaf. The appellants assert that this emblem is merely a symbolic statement advocating revision or repeal of current drug laws.
 
 
 40
 The scienter requirement embodied in the forfeiture provision--that items are subject to seizure only if they are used or intended for use by the person in control of them in violation of the controlled substances laws--eliminates the possibility that the statutory provision can lawfully be applied to items intended only to advocate a political view regarding drug usage. Further, if the forfeiture provision pertaining to books and literature, id. Sec. 16-6-8.5-5(a)(5), were broad enough to encompass advertising or other promotional materials pertaining to items intended for use with illegal drugs, it does not impinge upon the First Amendment right to commercial speech because speech proposing illegal activity can be regulated or banned entirely. E.g., Hoffman Estates, 455 U.S. at 496, 102 S.Ct. at 1192.
 
 
 41
 The district court correctly concluded that HEA 1468 does not violate any protected First Amendment rights.
 
 V. VAGUENESS
 
 42
 The final--and most difficult--question regarding the Indiana statute is whether it is unconstitutionally vague. The appellants' principal contention is that the lack of any examples of prohibited items and of factors to be considered in determining whether an object subject to the statute render it vague under both the fair notice and the arbitrary enforcement prongs of the Grayned test. Grayned v. City of Rockford, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972). Related to this argument is their claim that the scienter element in the Indiana statute fails to cure the vagueness problem. Finally, the appellants assert that even if the statute were otherwise constitutional, the inclusion of the word "primarily" in sections 35-48-4-8.1 and 8.2 renders the statute impermissibly vague. We discuss the latter contention first.
 
 
 43
 A. Qualification of Scienter Requirement by "Primarily"
 
 
 44
 Sections 35-48-4-8.1 and 8.2 prohibit the manufacture or design and the delivery of drug paraphernalia. In each section an object is made subject to the statute if the alleged violator "intends it to be used primarily for" introducing a controlled substance into the body, testing the strength, effectiveness or purity of a controlled substance, or enhancing the effect of such a substance. The plaintiffs' claim is that the effect of "primarily" is to minimize the burden of proving intent.
 
 
 45
 The cases on which the appellants rely involve laws construed to turn on the intent--or, more precisely, the "primary" intent--of someone other than the violator, e.g., Magnani v. City of Ames, 493 F.Supp. 1003 (S.D.Iowa 1980); Music Stop, Inc. v. City of Ferndale, 488 F.Supp. 390, 394 (E.D.Mich.1980), and for that reason they were held invalid. HEA 1468 is distinguishable because it clarifies whose intent is relevant.
 
 
 46
 The inclusion of the word "primarily" would appear more likely to benefit than to burden a defendant. If the word were absent from the statute, the prosecution's burden of proof would be to offer sufficient evidence that a reasonable trier of fact could conclude that the defendant "intended" an item for any of the specified drug-related purposes. Proving intent does not require the prosecution to prove that the defendant envisioned no legal uses to which an object might be put; rather, he must prove only that the defendant intended some illegal usage. The "primarily" requirement ensures that the defendant who anticipates both legal and illegal uses of an item can be convicted only if his intent that it be used illegally predominates. See High Ol' Times, Inc. v. Busbee, 673 F.2d 1225 (11th Cir.1982) (approving statutes including "primarily intended" without discussion of "primarily").
 
 
 47
 We conclude therefore that the inclusion of the word "primarily" in this context does not render the statute unconstitutional if it otherwise satisfies the vagueness criteria of Grayned.
 
 B. Fair Notice: the Scienter Requirement
 
 48
 Under Grayned, we must evaluate the statute both in terms of the notice it affords potential offenders and the risk that it will be discriminatorily or arbitrarily enforced. Focusing on the fair notice prong of the test, it is critical that we construe the scienter requirement of the statute.
 
 
 49
 The Hoffman Estates Court recognized "that a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed." 455 U.S. at 499, 102 S.Ct. at 1193. As this court noted in Antioch, in order to cure an otherwise vague statute, the scienter requirement must " 'envisage not only a knowing what is done but a knowing that what is done is unlawful, or at least, so "wrong" that it is probably unlawful.' " 684 F.2d at 453 (quoting Amsterdam, The Void-for-Vagueness Doctrine in the Supreme Court, 109 U.Pa.L.Rev. 67, 87 n. 98 (1960)).
 
 
 50
 A scienter requirement cannot eliminate vagueness, therefore, if it is satisfied by an "intent" to do something that is in itself ambiguous. In the context of drug paraphernalia legislation, the potential vagueness of a law would not be cured if the legislation required only an intent to display, design, supply or use whatever might be classifiable as drug paraphernalia. See Antioch, 684 F.2d at 453. The contrast in the holdings of this court in Antioch and Record Head illustrates the importance of a scienter requirement that is non-circular. In Antioch, the drug paraphernalia ordinance, which was held constitutional, contained a definitional section that was, with very minor variations, like the Model Act. The court explicitly noted that the scienter requirement was not a mere circular reiteration of the offense. Id. In the same paragraph, the Antioch court distinguished the West Allis ordinance, which was held unconstitutionally vague in Record Head, on the ground that its intent requirement could only be interpreted in the circular, nonclarifying sense. Id.[6]
 
 
 51
 The scienter requirement embodied in HEA 1468 distinguishes the statute from that at issue in Geiger v. City of Eagan, 618 F.2d 26 (8th Cir.1980), on which the appellants rely. The ordinance at issue in Eagan defined "drug-related device" as "any pipe or other object suitable for smoking," id. at 28, and qualified this extremely broad definition by a listing of characteristics, in themselves ambiguous, that purported to distinguish a legal from an illegal pipe, id. at 28-29. The ordinance lacked any scienter requirement whatsoever. By contrast, the drug paraphernalia law at issue in Casbah, Inc. v. Thone, 651 F.2d 551 (8th Cir.1981), cert. denied, 455 U.S. 1005, 102 S.Ct. 1642, 71 L.Ed.2d 874 (1982), was patterned closely on the Model Act--including its scienter requirement--and was held constitutional by a panel of the same court that invalidated the Eagan ordinance.
 
 
 52
 The scienter requirement in HEA 1468 is not merely an intent to design, manufacture, distribute, or possess items that could be deemed drug paraphernalia. The Indiana statute "defines" the scope of its prohibition by reference to the intent of the violator. To this extent, it is similar to the Model Act. The Indiana statute is, in fact, somewhat clearer than the initial portion of the Model Act's definitional section because HEA 1468 is phrased so as to eliminate any possibility that one could be convicted on the basis of someone else's intent to use an object with controlled substances. This aspect of HEA 1468 also distinguishes the statute from the predecessor version found unconstitutional in NORML. Further, as the Antioch court stated: "Since very few of the items a paraphernalia ordinance seeks to reach are single-purpose items, scienter is the only practical way of defining when a multi-purpose object becomes paraphernalia." 684 F.2d at 453.
 
 
 53
 The scienter requirement in HEA 1468 is analogous to that of the Model Act. Numerous courts, including this court in Antioch and Camille, have held that laws patterned on the model legislation satisfy the fair notice requirement of due process.
 
 
 54
 We turn therefore to the second prong of the Grayned test: the danger of arbitrary enforcement. The absence of enumerated examples of prohibited items and the lack of factors to be considered in determining whether an object is subject to the statute is relevant to this aspect of our discussion.
 
 C. Arbitrary Enforcement
 
 55
 One possible starting point is the recent decision of the Eleventh Circuit in High Ol' Times, Inc. v. Busbee, 673 F.2d 1225 (11th Cir.1982). High Ol' Times is analogous to the instant case in that the relevant legislation contained neither examples nor a list of factors to be used in determining whether an object was subject to regulation. The drug paraphernalia laws at issue in High Ol' Times were general prohibitions rather than licensing requirements like the Hoffman Estates ordinance; nonetheless, the Eleventh Circuit read Hoffman Estates as precluding any pre-enforcement challenge premised on the risk of discriminatory enforcement. High Ol' Times, 673 F.2d at 1231. Although Hoffman Estates, read broadly, supports this result, it would appear inconsistent with this court's opinion in Record Head in which the majority relied on the potentiality for arbitrary enforcement of the ordinance which encompassed private as well as business conduct. Because the High Ol' Times court found the question of arbitrary enforcement foreclosed by Hoffman Estates, it did not analyze the impact of the absence of factors and illustrative examples on the constitutionality of the statute.
 
 
 56
 We therefore believe that a more certain basis of analysis is the comparison between the Indiana statute and the Model Act. The examples provided by the Model Act fall into two categories: (1) objects with distinctive design characteristics often associated with the use of controlled substances, e.g., roach clips; and (2) items such as "blenders," "containers," and "scales" which lack such design characteristics but have proven to be used frequently in conjunction with illegal drugs. Unlike the Indiana statute found unconstitutional in NORML, the Model Act does not consider any item to be per se drug paraphernalia. A roach clip, and certainly a blender, is subject to the statute only if it is used, intended for use, or designed for use with illegal drugs.
 
 
 57
 The fourteen factors that follow the list of examples are more relevant to determining whether the scienter requirement is met than to classifying items based on design characteristics or traditional association with illegal drug usage. The factors are concerned with how and where an item is displayed, how its use is described by those in control of it, how it is advertised, and how experts believe it is generally used. A second characteristic of the factors is that many involve determinations more likely to be made, or which could only be made, by a trier of fact rather than by an officer charged with enforcing the law. Whether residue found on an object is that of a controlled substance is impossible to determine without laboratory testing. Similarly, it is unlikely that an officer would know, prior to making an arrest, what the ratio of sales of an object is to the total sales of the business enterprise. Certainly, "expert testimony" refers to evidence introduced at trial rather than to a consideration relevant to whether an arrest is justified initially.
 
 
 58
 The examples and factors read together suggest that an officer's decision to make an arrest will be based on one or both of the following patterns: (1) objects are present which display design characteristics making them uniquely suitable for drug usage, e.g., roach clips; (2) the items are immediately recognizable as ones frequently used with illegal drugs, whatever lawful uses they might also have, and are described, displayed, or advertised so as to suggest that they are intended for use with illegal substances. The other evidence made probative by the enumerated factors plays little role in the initial decision to enforce the statute.
 
 
 59
 Deciding whether or not an arrest is justified by reference to design characteristics and/or by the manner of display is entirely consistent with Hoffman Estates. The Supreme Court found that the "designed for use" standard referred to the objective characteristics of an item and that "marketed for use" referred to the manner of display. Not only are the objective design features and the manner of display permissible starting points under Hoffman Estates, these considerations are dispositive as to whether an item is covered by the licensing provision. Roach clips, for instance, are not defined by the Hoffman Estates ordinance but invoke the licensing requirement without further showing. The guideline referring to "paraphernalia," which is subject to licensing, includes anything "displayed with roach clips or literature encouraging illegal use of cannabis or illegal drugs." 455 U.S. at 492-93 n. 3, 102 S.Ct. at 1190 n. 3.
 
 
 60
 The appellants claim that HEA 1468 is unconstitutional because it will be enforced by reference to either the design characteristics of particular objects or the manner of a retailer's display without regard to whether additional evidence of an alleged violator's intent has been established. This is, however, the functional equivalent of the enforcement pattern of the Model Act-type laws such as those approved by this court in Camille and Antioch. It is also entirely consistent with Hoffman Estates in which the only scienter required to invoke the licensing provision was that which the court found inherent in the "marketed for use" standard.
 
 
 61
 A related argument, focusing on the prosecution stage rather than the time of initial arrest, is that the "intent" required under the Indiana statute will be presumed from the design or display of objects. As the district judge stated, there is simply no basis for assuming in a pre-enforcement challenge that no other proof of intent can or will be offered.
 
 
 62
 A law will be found facially unconstitutional only if it is incapable of any valid application. Hoffman Estates, 455 U.S. at 494 n. 5, 102 S.Ct. at 1191 n. 5 (citing Steffel v. Thompson, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974)). The Indiana statute is capable of constitutional enforcement. If police arrest persons pursuant to it for displaying roach clips and bongs in close proximity to each other, their actions are consistent with Hoffman Estates and with the Model Act. The evidence of previous enforcements offered by the appellants suggests, in fact, that HEA 1468 is being enforced as though it contained the more detailed language of the Model Act. The two previous applications indicated that bongs, water pipes and roach clips were seized pursuant to the statute. All are included in the Model Act's non-exhaustive list of drug paraphernalia. The police records submitted to the district court indicate that, during one of the arrests, a residue was found on one or more seized items. The residue was subjected to laboratory testing. This is precisely what enforcement officials would or should do under the Model Act which specifies that the presence of residue from a controlled substance is a factor to be considered in determining whether the item is classifiable as drug paraphernalia.
 
 
 63
 We cannot assume that the Indiana legislature will not clarify the scope of the law through additional guidelines or that clarification will not be provided by the pattern of enforcement. Hoffman Estates, 455 U.S. at 502, 504, 102 S.Ct. at 1195, 1196. Should no guidelines be issued or should subsequent enforcement actions indicate that the statute is being enforced arbitrarily, that concern can properly be addressed in a post-enforcement challenge. The present case presents a facial challenge and, because we find that the law is capable of constitutional application, the appellants' claim is without merit.
 
 CONCLUSION
 
 64
 Having considered all the arguments urged by the appellants, we find no basis for holding the Indiana drug paraphernalia statute violative of either the First Amendment or the Due Process Clause. The judgment of the district court, 504 F.Supp. 938, is therefore
 
 
 65
 AFFIRMED.
 
 
 
 *
 John R. Bartels, Senior District Judge for the Eastern District of New York, sitting by designation
 
 
 [1]
 An example of a law patterned virtually verbatim on the Model Act is the East Moline, Illinois drug paraphernalia ordinance which is appended to this court's disposition in Camille Corp. v. Phares, 705 F.2d 223 (1983)
 
 
 [2]
 The ordinance also requires that one who sells such items file affidavits that the licensee and its employees have not been convicted of a drug-related offense, that records be kept of all sales of regulated items, and that no regulated items be sold to minors. 455 U.S. at 492, 102 S.Ct. at 1190
 
 
 [3]
 The analysis of this court in holding the ordinance unconstitutional, which was rejected by the Supreme Court, parallels to a large extent the analysis of the three-judge court in NORML
 
 
 [4]
 The Sixth Circuit disposition in Record Revolution, in which a variant of the Model Act was found unconstitutionally vague, has twice been vacated and remanded by the Supreme Court. See 451 U.S. 1013, 101 S.Ct. 2998, 68 L.Ed.2d 384 (1981) and 456 U.S. 968, 102 S.Ct. 2227, 72 L.Ed.2d 840 (1982)
 
 
 [5]
 Antioch and Record Head were decided by the same panel on the same day. The Antioch opinion dealt at some length with the contrast between the scienter required under two ordinances, characterizing that of the West Allis ordinance at issue in Record Head as circular and non-clarifying. Antioch, 684 F.2d at 453
 
 
 [6]
 The Record Head opinion states that "[i]n place of [a] scienter requirement, the West Allis ordinance enumerates various factors to be considered in deciding what is an instrument." 682 F.2d at 677 (emphasis added). Despite the majority's conclusion that the West Allis ordinance had no meaningful scienter requirement, one might read portions of the definitional section of that ordinance together with the substantive section and find a scienter requirement somewhat similar to that contained in the Antioch ordinance. Compare West Allis Revised Municipal Code, Sec. 6.026(2)(d), (3)(a) (reproduced in Record Head, 682 F.2d at 680-81) with the Antioch ordinance, Sec. 1(b)(5) (reproduced in Antioch, 684 F.2d at 456-57). The Record Head majority did not, however, so construe the West Allis ordinance. In any event, we need not devote more attention to Record Head at this time because Record Head and Antioch are distinguishable from each other in that the "factors" provided in the West Allis ordinance were found misleading, 682 F.2d at 677, and because Antioch fully supports our interpretation of the scienter requirement in the Indiana statute