Pete J. BUFFO, Petitioner-Appellant,

v.

Charles A. GRADDICK, Attorney General of the State of Alabama, Respondent-Appellee.

No. 83–7592.

United States Court of Appeals, Eleventh Circuit.

Sept. 20, 1984.

Robert Childers, Turner, Wilson, Christian & Dorrough, Montgomery, Ala., for Buffo.

Thomas R. Allison, Asst. Atty. Gen., Montgomery, Ala., for defendant-appellee.

Before GODBOLD, Chief Judge, JOHNSON and CLARK, Circuit Judges.

GODBOLD, Chief Judge:

Petitioner Buffo, a California real estate appraiser, was convicted of aiding and abetting Vanguard Security Life Insurance Co., an Alabama corporation, in a securities fraud in violation of § 8–6–17 Ala.Code (1975). He was fined $4000 and sentenced to three years imprisonment. His conviction was reversed by the Alabama Court of Criminal Appeals, which found there was no evidence to support the jury's conclusion that Buffo had conspired with Vanguard or had known of the fraud. *Buffo v. State,* 415 So.2d 1146 (Ala.Crim.App.1981). The Alabama Supreme Court reversed and ordered Buffo's conviction reinstated. *Buffo v. State,* 415 So.2d 1158 (Ala.1982). This habeas petition followed, and the district court denied relief. We conclude that the evidence was sufficient to support Buffo's conviction and affirm the district court.

## I. FACTS

Vanguard maintained offices in Montgomery, Alabama and was subject to the regulations of the Alabama Department of Insurance. On December 31, 1973 Vanguard was insolvent by $474,000 and subject to receivership proceedings by the Department unless this condition was cured. To solve the problem Vanguard contracted with Dari-International, Inc. ("Dari"), a Washington corporation doing business in California, to purchase three tracts of land, two in California and one in Tennessee, owned by Dari. The real estate purchase agreement required that the property have a total appraised value of at least $1,180,-

755.[1] In return for the land Vanguard agreed to pay $5,000 in cash, to share equally with Dari any profits realized on sale of the property, and to issue to Dari "surplus notes" in the principal sum of $50,000. A surplus note is a specialized type of promissory note by which the promisor agrees to pay the agreed principal amount and interest only if and when the promisor's financial condition is such that it has capital and surplus in excess of a stated amount. In this case the surplus notes were payable only if by their due dates Vanguard's capital and surplus exceeded $3.1 million. With Vanguard, the promisor, teetering on the brink of insolvency and receivership, its promise to pay the principal sum if its prospects brightened was almost worthless as a practical matter. This tenuous consideration for land appraised at over $1 million makes clear that the transaction was phony.

Appraisals for the three parcels totalled approximately $1.5 million, and the transaction was closed. The appraisals pumped up Vanguard's balance sheet sufficiently to cure its insolvency and give it an apparent net worth of $78,773 on December 31, 1974. It continued to do business until the Department put it in receivership in March 1976. It ended up with almost 2000 unpaid claims totalling more than $2 million.

Buffo performed the required appraisal for one of the California tracts sold by Dari to Vanguard. In June 1974 he submitted an appraisal report to Vanguard valuing the property, a 360-acre parcel of remote and inaccessible mountainside land, at $2000 per acre. His report was addressed to the corporate secretary of Vanguard in Montgomery. In the report Buffo certified that neither his compensation nor employment was contingent on the value he reported. The report also stated that it could not be "used for any purpose by [anyone] except the addressee without the previous written consent of the appraiser."

Buffo was subsequently indicted for and convicted of violating § 8–6–17 (Ala.Code 1975), which provides:

It is unlawful for any person, in connection with the offer, sale or purchase of any security, directly or indirectly, to:

(1) Employ any device, scheme, or artifice to defraud;

(2) Make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or

(3) Engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person.

The evidence introduced at Buffo's trial permitted the jury to conclude that he had overvalued the land by a factor of about 40. Thompson, a Los Angeles real estate appraiser, estimated in 1976 that the property was worth only $55 per acre. Hill, an appraiser from Palm Springs, valued the parcel's worth at $50 per acre. Thus under their testimony, Buffo had appraised at $720,000 a tract worth approximately $18,000. In addition, Thompson, an appraiser from Los Angeles, testified about a subsequent appraisal of the same slope property that he conducted for Buffo in 1976. Thompson appraised the land at $55 per acre. When he gave Buffo the appraisal, Buffo told him that they had to raise the figures because he, Buffo, had appraised it at $2000 per acre in 1974. Buffo indicated that the appraised value would be used on Vanguard's capital statement. Buffo revised Thompson's figures by simply doubling his prior appraised value of $2000 and stated that the property was now worth $4000 per acre.

In reinstating the conviction the Alabama Supreme Court found that "[i]n the absence of the $2000.00 per acre appraisal on the 360 acres of slope property, submitted by Vanguard to the Alabama Department of Insurance, Vanguard would not have been solvent and would have been placed into receivership at that time." 415 So.2d at 1150.

---

1. The record does not indicate why the parties agreed on this amount.

In his petition for a writ of habeas corpus Buffo challenged the sufficiency of the evidence adduced at trial, particularly as it went to the state court's jurisdiction and venue. Buffo alleged that his only act was to appraise the California property in California, and that this act alone was insufficient to constitute a crime under the laws of Alabama that would confer jurisdiction on the state court to try him. He further alleged that absence of contacts with Alabama rendered his trial violative of his venue rights under the federal constitution.

The district court treated the Alabama Supreme Court's finding that Buffo had aided and abetted Vanguard in a securities fraud as a "pure finding of fact" by the state court and accorded it a presumption of correctness under 28 U.S.C. § 2254(d) (1976). On the basis of that finding the district judge held that, since an aider and abettor may be tried in any district in which the principal committed the substantive crime, jurisdiction and venue were proper in the Alabama county in which Vanguard committed the underlying securities fraud. Accordingly, summary judgment was entered for respondent.

## II. SUFFICIENCY OF THE EVIDENCE

■ On collateral review of a state court conviction for sufficiency, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original). In this case we must make the threshold determination of what the elements of the offense are that must be proven to convict under § 8–6–17.

Section 8–6–17 is almost identical to Rule 10b–5 of the Securities and Exchange Commission. *See* 17 C.F.R. § 240.10b–5 (1983). For this reason, the Alabama Supreme Court has established that "since there are few Alabama cases construing the Alabama securities laws, federal cases should be reviewed to aid in the proper interpreta-

tion of the corresponding sections of Alabama statutory law inasmuch as the sections are virtually identical." *Buffo*, 415 So.2d at 1162.

In reviewing Buffo's conviction, the Alabama Court of Criminal Appeals had found that two necessary elements of the offense were lacking. First, Buffo had no knowledge that Vanguard was going to use his appraisal in reports submitted to the Department or in connection with the surplus notes. Second, even if Buffo had known his appraised value was false, that falsity was not "in connection with" the sale of the security, i.e., the note.

The Alabama Supreme Court rejected both of these conclusions, holding that the evidence was sufficient to permit a reasonable jury to find that Buffo had known that his appraisal was false and that no additional mens rea was necessary to sustain his conviction. In addition, the court adopted a broad construction of the "in connection with" requirement, requiring only statements and activities "touching" the sale of the security. 415 So.2d at 1164.

■ The state has broad police powers to prohibit fraud, and the state's highest court is the ultimate authority in the construction of state legislation. The Alabama Supreme Court's definition of the elements of § 8–6–17 is binding on us unless that construction surpasses the limits that due process imposes on the construction and application of criminal statutes. One such limitation is fair notice to the defendant. Due process requires that criminal statutes give fair warning to persons of ordinary intelligence of the proscribed conduct and the persons covered. *Owens v. Wainwright*, 698 F.2d 1111, 1115 (11th Cir.1983) (per curiam), *cert. denied*, — U.S. —, 104 S.Ct. 117, 78 L.Ed.2d 116 (1984); *High Ol' Times, Inc. v. Busbee*, 673 F.2d 1225, 1228 (11th Cir.1982); *Florida Businessmen for Free Enterprise v. City of Hollywood*, 673 F.2d 1213, 1218 (11th Cir.1982). Since the Alabama statute at issue here has generally been construed in accordance with federal precedent governing Rule 10b–5, a marked departure by the

Alabama Supreme Court from that standard in reviewing this case would violate due process by failing to provide adequate notice of what conduct was criminalized by § 8–6–17. In determining the nature and scope of the mens rea and "in connection with" elements of the state offense, we therefore examine the Alabama Supreme Court's holding—that the evidence was sufficient to sustain Buffo's conviction for aiding and abetting securities fraud—against the backdrop of federal precedent detailing the elements of a 10b–5 violation.

■ The "in connection with" requirement of Rule 10b–5 is "[t]he most imprecise, and consequently the most flexible, element" of a 10b–5 claim. Note, *The Pendulum Swings Farther: The "In Connection With" Requirement and Pretrial Dismissals of Rule 10b–5 Private Claims for Damages*, 56 Tex.L.Rev. 62, 63 (1977). The phrase requires a certain relationship between the defendant's actions and a securities transaction. *Id.* In *Superintendent of Insurance v. Bankers Life & Casualty Co.*, 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971), the only Supreme Court case that specifically addresses what relationship is required, the Court found the necessary nexus in a "deceptive practice[ ] touching [the] sale of securities." *Id.* at 12–13, 92 S.Ct. at 168–69. Declining to be more specific in its guidance to lower courts, the Court strongly implied that the matter was best left to case by case resolution.

> "[We do not] think it sound to dismiss a complaint merely because the alleged scheme does not involve the type of fraud that is 'usually associated with the sale or purchase of securities.' We believe that § 10b and Rule 10b–5 prohibit *all* fraudulent schemes in connection with the purchase or sale of securities, whether the artifices employed involve a garden type variety of fraud, or present a unique form of deception. Novel or atypical methods should not provide immunity from the securities laws."

*Id.* at 10 n. 7, 92 S.Ct. at 168 n. 7 (quoting *A.T. Brod & Co. v. Perlow*, 375 F.2d 393,

397 (2d Cir.1967) with alteration in original).

Subsequent to *Bankers Life* federal courts have tended to construe the "in connection with" element broadly. 3A. Bromberg & L. Lowenfels, *Securities Fraud & Commodities Fraud* § 7.6(1) (1983). In one of the more detailed discussions of the requirement the Third Circuit set out a number of factors that should guide a court in determining whether the element has been proven. *See Ketchum v. Green*, 557 F.2d 1022, 1025–30 (3d Cir.), *cert. denied*, 434 U.S. 940, 98 S.Ct. 431, 54 L.Ed.2d 300 (1977). Those factors are (1) whether the transaction was in actuality little more than a dispute over internal corporate management, (2) the degree of proximity between the securities transaction and the claimed fraud, (3) whether there was a causal connection between the fraud and the securities transaction, and (4) whether the particular transaction is one appropriate for federal regulation. *Id.* The fourth factor is, of course, irrelevant here since the issue is one of state regulation.

■ Although the Alabama Supreme Court focused entirely on the causation factor in finding the appraisal "in connection with" the issuance of the surplus notes, after examining the facts in the light most favorable to the state, we conclude that the other factors are met as well. No internal management disputes were involved. This was a securities transaction designed to victimize not the parties but the creditors of Vanguard. Furthermore, the degree of proximity was close. As in *Banker's Trust*, the fraud was no more than one step removed from the securities transaction. Buffo's appraisal was required by the contract; the agreement specified the total appraised value required. This was not a routine appraisal conducted in the ordinary course of business that eventually was considered or relied upon during the purchase or sale of a security. The appraisal was an integral part of the securities transaction. Finally, there was a causal connection between the appraisal and issuance of the note. But for the appraisal no note would

have issued, since the agreement expressly required an appraisal and specified a necessary amount. Under these circumstances we think it clear that the Alabama Supreme Court was well within its authority in construing § 8–6–17's "in connection with" element as broadly as it did. Furthermore, there is sufficient evidence in the record to support a reasonable jury's conclusion that this element was proved beyond a reasonable doubt. *Jackson v. Virginia* is satisfied with respect to this element of the offense.

■ The remaining issue on the sufficiency claim is whether the mens rea element was adequately proved at Buffo's trial. The Alabama Supreme Court held that all that was required under state law was proof beyond a reasonable doubt that Buffo was aware of his own fraudulent act; " 'it need not be proved that the defendant had specific knowledge that the object sold or offered was a security.' " 415 So.2d at 1165 (quoting *U.S. v. Brown*, 578 F.2d 1280, 1284 (9th Cir.), *cert. denied*, 439 U.S. 928, 99 S.Ct. 315, 58 L.Ed.2d 322 (1978)). Under this analysis, Buffo did not need to know of the security transaction and the only intent required went to his knowledge of the false appraisal. Federal precedent on aiding and abetting a securities transaction requires no more in the way of mens rea.

Federal courts have generally stated the requirements for aiding and abetting liability in a securities fraud case as (1) the existence of a securities law violation by the primary party, (2) general awareness by the aider and abettor that his role was part of an overall activity that is improper, and (3) substantial assistance by the aider and abettor in the achievement of the primary violation. *See, e.g., IIT v. Cornfeld*, 619 F.2d 909, 922 (2d Cir.1980); *Woodward v. Metro Bank of Dallas*, 522 F.2d 84, 94–95 (5th Cir.1975).

Only the second element poses any mens rea requirement, and a reasonable jury could have found it met here.

The second element

calls for general awareness that one's role was part of an overall activity that is improper. In this connection, the surrounding circumstances and expectations of the parties are critical. If the alleged aider and abettor conducts what appears to be a transaction in the ordinary course of his business, more evidence of his complicity is essential.

*Woodward*, 522 F.2d at 95. The evidence adduced at Buffo's trial was clearly adequate on this point. Evidence showing an overvaluation of 40 times the land's actual worth permitted the jury to infer that Buffo knew his appraisal was false. Thompson's testimony concerning the 1976 appraisal was admitted only on the issue of Buffo's knowledge and intent on the 1974 appraisal, but it permitted the jury to conclude that Buffo knew of the falsity of his 1974 appraisal and of Vanguard's likely use of it on its capital statement. Evidence sufficiently supported a conclusion that Buffo knew that his appraisal was part of an improper activity by Vanguard. The mental state specified in the second element is met here.

In summary, we have examined the Alabama Supreme Court's determination of the elements of Buffo's offense and found it compatible with governing federal securities law, which the Alabama court had held was generally controlling. Because the evidence adduced at trial was sufficient to satisfy the *Jackson v. Virginia* test on the elements challenged by petitioner, we find his sufficiency claim is without merit.

### III.  JURISDICTION AND VENUE

■ Buffo argues that the facts concerning his involvement in the securities fraud do not support the state of Alabama's assertion of jurisdiction over him. In *Strassheim v. Daily*, 221 U.S. 280, 31 S.Ct. 558, 55 L.Ed. 735 (1911), the Supreme Court considered whether the state of Michigan had criminal jurisdiction over Daily, a Chicago resident, in a prosecution for taking under false pretenses and bribery. From Chicago, Daily offered a Michigan

official a bribe and submitted a bid to sell the state some second-hand machinery that he asserted was new. In upholding Michigan's jurisdiction the Court stated:

Acts done outside a jurisdiction, but intended to produce and producing detrimental effects within it, justify a state in punishing the cause of the harm as if he had been present at the effect, if the state should succeed in getting him within its power.

*Id.* at 285, 31 S.Ct. at 560. *Accord Charron v. U.S.*, 412 F.2d 657, 659 (9th Cir. 1969). Viewed in the light most favorable to the state, the evidence showed that Buffo intended that Vanguard rely on the false appraisal figure and that, based on his statements to Thompson in 1976, he knew in 1974 that the false value was to be used on the company's capital statement. Thus he committed the act of submitting a false appraisal, knowing it would have effects in Alabama. The detrimental effects here, fraud resulting in harm to Vanguard's creditors, were within the power of the state to punish. Under these circumstances, *Strassheim* supports Alabama's exercise of jurisdiction over Buffo.

Venue was also proper for the reason set out by the district court: as an aider and abettor, Buffo could be tried where Vanguard, the principal, committed the substantive offense. *See Williams v. Alabama*, 383 So.2d 564, 565 (Ala.), *cert. denied*, 449 U.S. 995, 101 S.Ct. 534, 66 L.Ed.2d 293 (1980); 22 C.J.S. § 184 (1961).

AFFIRMED.