**In re CASCADE INTERNATIONAL SECURITIES LITIGATION**

**This Document Relates to: All Actions**

**No. 91–8652–CIV.**

United States District Court, S.D. Florida.

June 27, 1995.

Atlee W. Wampler, Wampler, Buchanan & Breen, P.A., Miami, FL, Michael J. Pucillo, Burt & Pucillo (argued), West Palm Beach, FL, Steven J. Toll, Daniel S. Sommers, Cohen, Milstein, Hausfeld & Toll (argued), Washington, DC, Sherrie R. Savett (argued), Jeanne A. Markey, Berger & Montague, P.C., Philadelphia, PA, for plaintiffs.

Homer L. Marlow, Joseph H. Lowe, Marlow, Connell, Valerius, Abrams, Lowe & Adler (argued), Miami, FL, for defendant Karp & Sommers.

Benjamin H. Hill (argued), Dennis P. Waggoner, Hill, Ward & Henderson, Tampa, FL, for defendant Gunster Yoakley.

Keith Olin (argued), Nancy Copperwaite, Morgan, Lewis & Bockius, Miami, FL, for defendant Raymond James.

John T. Kinsey, Kinsey & Gleason, Boca Raton, FL, for defendant Deltec Securities.

Matthew J. Broderick (argued), Salvatore R. Faia (on brief), Dechert, Price & Rhoads (argued), Philadelphia, PA, Richard H. Critchlow, Kenny, Nachwalter, Seymour, Arnold & Critchlow, Miami, FL, for defendant Coopers & Lybrand.

Richard E. Carlton, Sullivan & Cromwell (argued), New York City, for defendant Deltec.

## ORDER

NESBITT, District Judge.

This cause comes before the Court upon Defendant Coopers & Lybrand's Motion for Reconsideration, filed January 24, 1994 (D.E. # 283).

### I. INTRODUCTION

On December 16, 1993, the Court entered an Order granting Defendant Coopers & Lybrand's ("C & L") Motion to Dismiss as to Count V (Negligent Misrepresentation) and Count VII (Common Law Fraud). The Court, however, denied Defendant C & L's Motion to Dismiss as to Count I, a count for violation of § 10(b) of the Securities Exchange Act of 1934. In addition, the Court denied C & L's Motion to Dismiss those portions of Count I that alleged that Defendant C & L was liable for aiding and abetting the violation of § 10(b).

In response to the Court's Order, Defendant C & L filed a Motion for Reconsideration, asserting that the Court mistakenly interpreted the Eleventh Circuit's decision in

*Rudolph v. Arthur Andersen & Co.*, 800 F.2d 1040 (11th Cir.1986), *cert. denied*, 480 U.S. 946, 107 S.Ct. 1604, 94 L.Ed.2d 790 (1987), by finding that Defendant C & L had a duty to disclose information regarding the alleged fraud committed by Cascade International, Inc. ("Cascade") and its directors.

While the motion for reconsideration was pending, the United States Supreme Court, in April of 1994, issued its opinion in *Central Bank of Denver v. First Interstate Bank of Denver*, —— U.S. ——, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994). In this decision, the Supreme Court clearly held that, "Because the text of § 10(b) does not prohibit aiding and abetting, we hold that a private plaintiff may not maintain an aiding and abetting suit under § 10(b)." *Id.* at ——, at 1455. Relying on the *Central Bank* case as supplemental authority, Defendant C & L filed on September 15, 1994, an additional Memorandum of Law in Support of its Motion for Reconsideration. After denying Plaintiff's motion to strike Defendant's memorandum, the Court gave Plaintiffs leave to file a response to all outstanding supplemental memoranda filed by Defendant C & L. Plaintiffs filed their consolidated response on March 30, 1995. The issues raised by the motions for reconsideration are now ripe for disposition.

Initially, all parties concede that, after *Central Bank*, Plaintiffs can no longer maintain against Defendant C & L an action for aiding and abetting the violation of § 10(b). In its motion and supplemental memoranda, Defendant C & L also proffers three arguments as to why the Court should reconsider its earlier decision and dismiss all § 10(b) claims against Defendant C & L: (1) that because Defendant C & L had no duty to disclose to the public that Cascade was committing violations of the securities laws, Defendant C & L cannot be held liable under § 10(b) for any alleged omissions; (2) that because the allegations of Plaintiffs' Consolidated Amended Class Action Complaint ("Consolidated Complaint") actually allege violations that are more properly described as actions to aid and abet the violation of § 10(b)—and do not allege primary violations of the securities laws—Count I should be

dismissed as against Defendant C & L; and (3) that because the actions of C & L were not made "in connection with the purchase or sale of any security,"—one of the elements of a § 10(b) action—Plaintiffs have failed to allege a cause of action against Defendant C & L under which relief may be granted.

There is little doubt that, with the decision in *Central Bank*, the securities laws have undergone a significant transformation the results of which will not be settled for many years. The import and scope of that decision has compelled the Court to reconsider its earlier ruling regarding the liability of Defendant C & L. Upon reconsideration, the Court has determined that Plaintiffs have failed to adequately allege a cause of action against Defendant C & L under § 10(b) for which relief can be granted.

## II. DISCUSSION

### A. Standard for a Motion to Dismiss

■ Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a court to dismiss a claim on the basis of a dispositive issue of law. *Neitzke v. Williams*, 490 U.S. 319, 326, 109 S.Ct. 1827, 1832, 104 L.Ed.2d 338 (1989). The Court, however, is confined to a review of the allegations pleaded in the complaint, must accept those allegations as true, and must resolve any factual issues in a manner favorable to the nonmovant. *See Quinones v. Durkis*, 638 F.Supp. 856, 858 (S.D.Fla. 1986). Thus, a claim may be dismissed pursuant to Rule 12(b)(6) only if it is clear that no relief could be granted under any set of facts consistent with the allegations. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

### B. Allegations in the Consolidated Amended Class Action Complaint

Before addressing the merits of Defendant C & L's Motion for Reconsideration, it is first important to analyze the *actual* allegations made against C & L in the Consolidated Complaint. The Court must then filter these allegations through the elements of a

§ 10(b) action, as interpreted by *Central Bank,* to remove those allegations that merely allege activity that may have aided and abetted a violation of the securities laws. With the remaining allegations that allege a primary violation of the securities laws, the Court can then determine whether Defendant C & L had a duty to disclose information to the public about Cascade's alleged material misrepresentations.

Section 10(b) of the 1934 Act provides that, "It shall be unlawful for any person . . . [t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange Commission ("SEC")] may prescribe." 15 U.S.C. § 78j(b) (1995). One such rule, adopted by the SEC in 1942, is Rule 10b–5, which states in pertinent part that, "It shall be unlawful for any person . . . [t]o engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b–5 (1994).

The alleged fraudulent activity of Defendant Cascade need not be reiterated here. As a staring point, however, for the analysis of the allegations against Defendant C & L, the Consolidated Complaint in pertinent part alleges that Defendant Cascade—the parent company for a number of subsidiaries that either produced cosmetics or acted as retail outlets for these cosmetics and for women's apparel—committed a violation of the securities laws by grossly overstating the number of retail outlets, stores, or counters within stores that were owned and operated by the company and its subsidiaries. (Compl.[1] ¶ 5.) Cascade also allegedly reported in public statements that the company was very profitable, when, according to Plaintiffs, Cascade was losing significant amounts of money. (*Id.* ¶ 5(c).)

From 1989 to 1991, Cascade employed Defendant C & L to audit two of Cascade's subsidiaries and to provide other accounting advice to Cascade. (*Id.* ¶¶ 131–156.) During the entire time in which C & L did work for Cascade and its subsidiaries, however, Defendant Bernard Levy was the actual independent auditor of the parent Cascade. (*Id.* ¶ 15.)

According to Plaintiffs, in the Spring of 1989 Cascade acquired the assets of two lower priced women's apparel chain stores, which were in bankruptcy at the time: Diana Shops, Inc. ("Diana"), and Allison's Place, Inc. ("Allison"). (*Id.* ¶ 7(d).) By July of 1991, these two businesses were merged into Cascade's subsidiary Fran's Fashions, Inc. ("Fran's Fashions"). (*Id.*) In July of 1990, Cascade also acquired the assets of another business, Cricket Shop, Inc. ("Cricket"). (*Id.*)

In 1990 and 1991, Cascade requested Defendant C & L to perform either audits or asset reviews of these corporations to determine their viability. (*Id.* ¶¶ 132–34.) In addition, C & L performed an audit of the consolidated balance sheet for Fran's Fashions for the fiscal years ending in June of 1990 and June of 1991. (*Id.* ¶ 134.) The complaint does not allege that any of these audits or asset reviews contained material misrepresentations or omissions. Plaintiffs do, however, allege that Defendant C & L violated a number of standard accounting procedures when it conducted these audits, (*Id.* ¶¶ 141–42.), yet Plaintiffs make no allegations in their Consolidated Complaint that the failure to comply with these standards resulted in the making of material misrepresentations or omissions, which were then relied on by the purchasers or sellers of Cascade's stock.

In August of 1990, Cascade also acquired the assets of Conston Corporation and its subsidiaries ("Conston"), which specialized in retailing large-sized women's apparel. (*Id.* ¶ 7(e).) Defendant C & L performed a "due diligence" review of Conston during 1990, as well as an audit of projected revenues and profits. (*Id.* ¶ 137.) In addition, Conston filed a Form 10–K with the SEC in June of 1991, which was not alleged to have been

---

1. All references to the Complaint are references to Plaintiffs' Consolidated Amended Class Action Complaint, filed July 7, 1992 (D.E. # 79).

prepared by Defendant C & L, but which did include C & L's audit report of Conston. *Id.* Plaintiffs also allege that Cascade sought Defendant C & L's advice as to whether Cascade needed to include the financial statements of the subsidiary Conston—which was suffering significant losses—in Cascade's financial statements. (*Id.* ¶ 144.) Defendant C & L allegedly counseled Cascade not to include Conston's numbers with Cascade's. (*Id.*)

Moreover, Plaintiffs allege that C & L assisted Cascade with advice regarding state and federal tax issues (*Id.* ¶ 138), provided some unspecified assistance to Cascade's accountant Levy in preparing Cascade's September 30, 1989 10–Q (*Id.*), and provided further advice on whether Conston's financial statements should be consolidated with those of Cascade. (*Id.* ¶ 139.) Thus, in summary, Plaintiffs allege that, "[T]hroughout the Class Period, [C & L] provided extensive, ongoing auditing and/or consulting services for Cascade and its subsidiaries." (*Id.* ¶ 140.)

Finally, Plaintiffs allege that because C & L knew from its investigations of Fran's Fashions and Conston that these two subsidiaries were suffering significant losses, C & L should have known that these subsidiaries would require infusions of capital from the parent Cascade in order to be able to continue to operate. (*Id.* ¶ 150.) This, according to Plaintiffs, required Defendant C & L to investigate the financial stability of Cascade itself, which, if C & L had done so, would have revealed that Cascade did not have sufficient capital to support its subsidiaries with more money. (*Id.*)

With regards to Defendant C & L, Plaintiffs allege that the pinnacle of the fraud occurred when Cascade filed its 1991 10–K with the SEC. This 10–K was not prepared by Defendant C & L, but was prepared by the accountant Levy. Plaintiffs allege that after Cascade filed its 1991 10–K with the SEC, two items in the 10–K should have caused C & L some concern which in turn imposed a duty on it to publicly correct misstatements in the 1991 10K.

In particular, even though the allegedly misleading 1991 10K contained no statement by or reference to Defendant C & L, Plaintiff alleges C & L should have been alerted to the following:

First, Defendant C & L should have noticed that Conston's losses were not consolidated with those of Cascade's. Second, Defendant C & L should have noticed that Cascade had represented that Fran's Fashions was operating 126 stores, when, in fact, C & L's audits should have revealed that Fran's Fashions was only operating 70 to 80 stores. Defendant C & L is therefore liable, according to Plaintiffs, for failing "to withdraw its opinion on Fran's Fashions' financial statements or make public the obvious misrepresentations contained within the 1991 10–K." (*Id.* ¶ 154.) Although not clearly stated by Plaintiffs, the implication from the Consolidated Complaint is that Defendant C & L should also have revealed to the public Cascade's failure to include Conston's losses in its 1991 filing with the SEC. Therefore, Plaintiffs' major allegation is that Defendant C & L made a material omission when it failed to comment publicly on Cascade's 1991 10–K. Only after Cascade admitted in late 1991 that there may have been problems with its financials did C & L withdraw its auditor reports for Conston and Fran's Fashions. (*Id.* ¶ 155–56.)[2]

---

2. Plaintiffs also make an allegation that C & L may have made oral *misrepresentations* directly to a third party:

> Sometime in October [1991], Casenove & Co. ("Casenove"), a British investment firm with very large holdings in Cascade stock, contacted Coopers in an effort to determine the truth or falsity of Cascade's public statements. [C & L] helped to allay the concerns of Casenove. In particular, [C & L] confirmed that all 126 apparel stores existed and stated that nothing appeared to be other than above board with Cascade.

(Compl. ¶ 152.) This is the only reference to any activity between Casenove and C & L in the Consolidated Complaint. Because Plaintiffs have failed to allege some of the other elements of a § 10(b) action in regards to this communication—e.g., reliance by Casenove on the assertion, in connection with the purchase or sale of securities—this one communication cannot form the basis of an allegation upon which relief can be granted, and need not be considered further by the Court.

Thus, in summary, Plaintiffs' major allegation against Defendant C & L is that, having audited two of Cascade's subsidiaries, and after realizing that Cascade's 1991 filing with the SEC must be inaccurate—as it was not supported by the information that C & L had discovered—C & L had a duty to disclose to the public these contradictions. Thus, Plaintiffs are not alleging that Defendant C & L made material misrepresentations, but that Defendant C & L omitted to correct Cascade's material misrepresentations.

It is interesting to note at this point what Plaintiffs are *not* alleging. They are *not* alleging that C & L's audits of Fran's Fashions or Conston contained material misrepresentations or omissions. In addition, Plaintiffs are not alleging that Defendant C & L audited Cascade's financial statements, and, therefore, are not alleging that C & L made assurances to the public about the accuracy of Cascade's financial statements.

## C. Allegations in Light of *Central Bank*

With these allegations in mind, the Court must now determine which allegations actually allege primary violations of § 10(b), and not consider any allegations which fall solely under the auspices of aiding and abetting— or secondary—liability. Plaintiffs do not allege that the accounting work performed by Defendant C & L for either Fran's Fashions or Conston contained material misrepresentation or omissions relied upon by the public in the sale or purchase of Cascade stock, so these audits cannot form the basis of liability under § 10(b).

■ In addition, any tax advice, advice to the accountant Levy, or advice on whether to consolidate Conston's financials with Cascade's can only be considered to be aiding and abetting the alleged fraud, and cannot form the basis for primary liability. This advice did not act as a statement by Defendant C & L upon which the public relied, and, at the most, could only be considered as aiding or abetting the fraud being committed by Cascade which is not actionable under *Central Bank.*

Consequently, the only remaining direct activity that Defendant C & L is alleged to have undertaken, and which could possibly constitute primary liability, is Defendant C & L's failure to make a public statement subsequent to the issuance of Cascade's 1991 10-K indicating that the 10-K may be misleading.

## D. Duty to Disclose

■ The Court must next decide whether Defendant C & L had a duty to disclose to the public the possibility that Cascade's 1991 10-K was fraudulent. "When an allegation of fraud is based upon nondisclosure, there can be no fraud absent a duty to speak." *Central Bank,* —— U.S. at ——, 114 S.Ct. at 1447. In § 10(b) cases alleging omissions by a defendant, "[A] defendant's omission to state a material fact is proscribed only when the defendant has a duty to disclose. Such a duty may exists "where the law imposes special obligations, as for accountants ... depending on the circumstances of the case." *Rudolph,* 800 F.2d at 1043 (quoting *Woodward v. Metro Bank,* 522 F.2d 84, 97 n. 28 (5th Cir.1975)). The Eleventh Circuit noted that an accountant should be held to this special duty to disclose because the duty "arises from the fact that investors are likely to rely on an accountant's work." *Id.* at 1044.

> Where it gives an opinion or certifies statements, an auditing firm publicly assumes a role that carries a special relationship of trust vis-a-vis the public. The auditor in such a case holds itself out as an independent professional source of assurance that the audited company's financial presentations are accurate and reliable....

*Id.* (quoting *Gold v. DCL Inc.,* 399 F.Supp. 1123, 1127 (S.D.N.Y.1973)).

■ *Rudolph,* however, stops short of providing more helpful guidance as to what action on the part of an accountant would create such a duty to disclose. On the one hand, the Eleventh Circuit in *Rudolph* states that, because an accountant has a special relationship to the public, including a duty to safeguard the public interest, and that the cost of revealing the information to the public is minimal relative to the amount of loss the public could suffer, then the accountant should have a duty to reveal information of the company's wrongdoing. "Standing idly by while knowing one's good name is being

used to perpetrate a fraud is inherently misleading." *Rudolph,* 800 F.2d at 1044.

On the other hand, the *Rudolph* court stated that, "We do not hold that the mere fact that [an accountant] is alleged to have known its reports were being used in a fraudulent scheme is by itself enough to establish a duty to disclose." *Id.* at 1045, n. 5. Depending on which of these two broad dictates it chooses, the Court could easily find either that the facts of this case as alleged in the Consolidated Complaint support the opinion that a duty to disclose exists, or that they fail to demonstrate such a duty. Other Courts interpreting this duty have provided little additional to these specific set of facts. Therefore, the Court is forced to determine the underlying policy reason for creating an accountant's duty to disclose, and then determine whether that policy is served by creating a duty in this case.

The concept of a duty to disclose appears to stem from the extent of reliance on the accountant's work made by the public and the expectations of the public. Clearly, in a situation in which the accountant "gives an opinion or certifies statements" about a company—statements which the accountant later discovers may not have been accurate based on false information provided by the company—then the accountant has a duty to disclose the fraud to the public. The accountant's previous statements were relied upon by the public, and the accountant's opinion is seen to be unbiased and honest. If the accountant later learns that its statements are being misused, it is understandable that the securities laws can impose upon it a duty to prevent the misrepresentations from continuing.

Conversely, if an accountant does not issue a public opinion about a company, although it may have conducted internal audits or reviews for portions of the company, the accountant cannot subsequently be held responsible for the company's public statements issued later merely because the accountant may know those statements are likely untrue. It follows therefore that an accountant who has not publicly expressed support for the company's financial statements upon which the public relied in connection with the sale or purchase of securities has no duty to alert the public to the content, even if inaccurate, of those statements in the future. In this case, Plaintiffs admit that Cascade's 10K was prepared by Bernard Levy and not by Defendant C & L. Therefore the public placed its reliance on the representations of Levy and had no reason to rely on C & L's audit. Even if the public may have relied on C & L's audit of the accounting work of Fran's Fashions and Conston which was incorporated in the Cascade public statement to be accurate, the Plaintiffs' Consolidated Complaint does not allege that C & L's audit contained any material misrepresentations or omissions. As a consequence, because C & L did not hold itself out as Cascade's auditor and never made a public statement about the financial condition of Cascade, C & L can have no duty now to alert the public that the 10K may be inaccurate after its issuance. Otherwise, under the Plaintiffs' theory, an accountant who performed an audit on only a small subsidiary of a company would be forever required to review any other public statement made by that company that could possibly be misleading, if the statement somehow failed to correctly incorporate the information revealed in the audit of a small subsidiary.

As *Rudolph* points out, a district court must look at any relevant factor in determining whether an accountant had a duty to disclose information to the public, and a duty to disclose "hinges on the 'circumstances of the case.'" *Rudolph,* 800 F.2d at 1045 (quoting *Woodward,* 522 F.2d at 97 n. 28). Looking at the circumstances of this case, the Court cannot say that, taking all the allegations of the Consolidated Complaint as true, and looking only at the allegations of a primary violation of § 10(b), Plaintiffs have alleged a set of facts whereby Defendant C & L had a duty to disclose possible misrepresentations in Cascade's 1991 10K. Accordingly, Defendant C & L should be dismissed from this action.

### E. "In connection with"

■ Because the Court has dismissed Defendant C & L on other grounds, it need not fully address Defendant C & L's contention that there can be no § 10(b) liability unless

the misrepresentation or omission was made directly "in connection with the purchase or sale of any security." Until overruled, this Court must observe the precedent in *Buffo v. Graddick,* 742 F.2d 592 (11th Cir.1984), that the "in connection with" requirement must be construed broadly. *Id.* at 596. *See also In re Ames Dep't Stores Inc. Stock Litigation,* 991 F.2d 953 (2nd Cir.1993). In the same way that the element of "reliance" can be read broadly to include the fraud on the market theory, the "in connection with" requirement can also be interpreted flexibly such that it can be met when a plaintiff alleges that the statement or lack of statement made by the defendant affected the price of the stock, therefore being in connection with the sale or purchase of the security. To hold otherwise would be to restrict § 10(b) actions solely to statements or omissions made during initial public offerings or upon additional shares being issued by the company. This Court is not willing, and need not make, that leap at this time without more compelling support for this position.

### F. Leave to Amend

At the conclusion of their March 30, 1995 Consolidated Response, Plaintiffs requested that if the Court were to grant Defendant C & L's Motion for Reconsideration, then Plaintiffs should be given leave to file a second amended complaint. This amended complaint would include eleven additional allegations regarding Defendant C & L's alleged involvement in the fraud.

These allegations, however, only provide additional examples of Defendant C & L's possible actions to aid and abet the fraud committed by Cascade. These examples do not demonstrate material misrepresentation or omissions made by Defendant C & L to the public, which were relied upon by the public in connection with their purchase or sale of Cascade stock. Consequently, as an amended complaint containing these eleven additional allegations would not withstand a motion to dismiss, the Court cannot grant Plaintiffs leave to amend their Consolidated Complaint based on these eleven new allegations.

### G. *Central Bank*

The decision to dismiss Defendant C & L from this action is in compliance with the trend begun by the decision in *Central Bank* to strictly interpret the requirements of § 10(b):

> Any person or entity, including a lawyer, accountant, or bank, who employs a manipulative device or makes a material misstatement (or omission) on which a purchaser or seller of securities relies may be liable as a primary violator under 10b-5, assuming *all* of the requirements for primary liability under Rule 10b-5 are met.

*Central Bank,* — U.S. at ——, 114 S.Ct. at 1455 (emphasis in original). Plaintiffs have failed to demonstrate that C & L may be liable of a primary violation under 10(b)5. Without an allegation of facts that would create a duty to disclose, the Court cannot impose 10(b) liability on C & L on the basis merely of allegations that C & L significantly aided and abetted the fraud.

### III. CONCLUSION

The only allegations of primary liability involve the fact that Defendant C & L omitted to make a public statement about Cascade's 1991 10-K. Because the Court has held that under the set of facts proffered by Plaintiffs, Defendant C & L had no duty to disclose to the public the potential fraud being committed by Cascade—thus failing to meet one of the elements of a § 10(b) claim—Plaintiffs have failed to allege in Count I of their Consolidated Complaint a cause of action upon which relief can be granted against Defendant C & L. Accordingly, it is hereby

**ORDERED** and **ADJUDGED** that Defendant Coopers & Lybrand's Motion for Reconsideration is **GRANTED,** and that Count I of Plaintiffs' Consolidated Amended Class Action Complaint as it pertains to Defendant Coopers & Lybrand is **DISMISSED.**

In addition, Plaintiffs' Request for Oral Argument, filed April 14, 1995 (D.E. # 418), is **DENIED.**

DONE and ORDERED.