Sidney SHAPIRO, Carol E. Acker, Robert J. Anderson, Robert Anderson, Herman Bertuleit, Philip Byrd, Rh Simpson, Jeffrey Slutsky, Chester Chen, Steven Tillis, Ciao Originals Ltd., Ralph Cioffi, Frieda Spivak, Seymour Cohen, John Constantine, Robert Thiebolt, Thomas Cornelius, Matthew Zimmerman, Jack Ebert, Stoney Elmore, Morris Feder, Jerome Feinberg, Norman Wolf, Kenneth Futter, Hillel Gauchman, Julia Gauchman, Joseph Goldberg, Elliot Goldstein, Wenrose Investments, Herbert Weber, Raymond Haeryluk, also known as Raymond Hawryluk, Edah Halliday, Mark Immowitz, Steven Jonas, Michael Kalvert, Lois Weaver, Edwin Kowpke, Robert Lapin, Thomas Laporta, Leff & Wolf Co., Jeffrey Leff, Dennis Levine, Marcia Levine, Alexander Lewin, John Low, James T. Malouf, Christina Marino, Michael Marks, Salvatore Vitale, Jerry Murrell, Hal Pahmer, Lee Pampel, Robert Parsont, Jay Pitlake, David Prescott, Henry Raffel, Clifford Rosenberg, Jack Rudick, Ira Trueman, Steven Schaeffer, Leonard Schonberg, Bush & Wagner, Melynda C. Caplan, Clinton C. Cator, Gerald B. Cohen, Eugene DeBlasio, Anthony DiPrima, Richard P. Donohoe, Easco, Inc., Judah S. Eliezer, Four C. Productions, Inc., Samuel D. Gaby, Charles Glatstian, Paul Gottbetter, Geoffry Gouch, Theodore E. Greenberg, William A. Henley, Marc J. Horman, K & M Partners, Gerald Kaufman, Alfred Lee, Ronald Levine, Stephen H. Littman, George Lowen, David D. Maytag, Nolan James Meredith, Jerry Oppenheim, Barbara Pakula, Philip Pakula, George Pinsley, P.C., Barbara Quinn, James B. Rector, Theodore Roosevelt, IV, Sebastian A. Ruma, Arnold L. Sabin, Karl Saliter, Stuart M. Salsbury, Abdol R. Sammi, Steven A. Sandler, Hayg Seferian, Stephen Shield, Manfred Sklar, Smeets Partners, Harold Spivack, Mary J. Stanhope, Henry L. Terrie, Jr., Phillip G. Terrie, Vincent T. Tucker, Jr., Douglas W. Tyler, Jr., Duane E. Vanderslice, Herman Venick, Douglas Webb, Jack Weiner, Leonard Wingarten, Harry Weinrauch, William Wolf, Ralph A. Zastenik, Joseph Allan Serulik, Judith B. Zerulik, Thomas Quinn, William Singler, Colt Mercantile Corporation, Max Israelson, Steven J. Bosses, Robert Schoenfeld, Plaintiffs–Appellants,

v.

Stephen CANTOR, Martin Cianciaruso, C & G Ventures, Inc., Bernard Teitelbaum, Harold Spivak, Jan K. Smeets, Ruffa, Video USA Assoc. # 1, Bruce Greenberg, Video USA Assoc. # 2, Video USA Assoc. # 4, Video USA Associates – 1(B), Limited Partnership, Video USA Assoc. 2(C), Video USA Assoc. 2(D), Video USA Assoc. 2(A), Video USA Associates –1, Video USA Associates –4, Video USA International Corp., Video USA, Ltd., Norman Nick, Mast Capital Investors, Ltd., Robert Weaver, Samuel Konigsberg, Marvin Greenfield, David Greenberg, Defendants,

Jerry Cohen, Touche Ross and Co., Alan Friedman, Deloitte & Touche & Company, Defendants–Appellees.

No. 1771, Docket 96–9529.

United States Court of Appeals,
Second Circuit.

Argued June 17, 1997.

Decided Sept. 8, 1997.

718

Lawrence Profeta, Warshaw, Burstein, Cohen, Schlesinger & Kuh, LLP, New York City (Stephen E. Powers, Warshaw, Burstein, Cohen, Schlesinger & Kuh, LLP, New York City, on the brief), for Plaintiffs–Appellants.

Leon P. Gold, Proskauer, Rose, Goetz & Mendelsohn, LLP, New York City (Mark E. Davidson and Richard L. Spinogatti, Proskauer, Rose, Goetz & Mendelsohn, LLP, New York City, on the brief), for Defendants–Appellees.

Before: WALKER, CALABRESI, and LAY,* Circuit Judges.

LAY, Circuit Judge.

In 1984 several individuals, David Greenberg, Bruce Greenberg, Norman Nick, Stephen Cantor and Marvin Greenfield (the principals), formed seven limited partnerships to develop and operate a chain of nearly 100 "Video USA" stores for the rental of video recordings. They also created various corporations to serve as general partners of the limited partnerships, as well as companies to manage and operate the video stores. The principals created three private placement offering memoranda dated November 23, 1984, June 12, 1985, and April 7, 1986.

The 116 limited partners invested approximately $13 million in the various limited partnerships. They claim that they were fraudulently induced to invest in the limited partnerships and that various defendants made material misrepresentations all in violation of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and § 12(2) of the Securities Act of 1933, 15 U.S.C. § 77l(2). In addition, their complaint alleges the defendants engaged in a pattern of racketeering activity in violation of the Racketeer Influenced and Corrupt Organization Act (RICO), 18 U.S.C. § 1962(b).[1] They brought

* Honorable Donald P. Lay, United States Circuit Judge for the Eighth Circuit, sitting by designation.

1. The district court dismissed the RICO claims on the basis that no predicate acts of fraud exist

to support such claims. The plaintiffs do not directly challenge the dismissal of the RICO claims on appeal. State claims were also raised against the Touche Ross defendants but these

suit against individual defendants in the limited partnerships and corporations, the law firm that assisted in the development of the enterprise, and the franchise dealer, Mast Capital Investors, Ltd. The plaintiffs also joined the accounting firm of Touche Ross and Co., its successors in interest, Deloitte & Touche, and Touche Ross employees Alan Friedman and Jerry Cohen (collectively Touche Ross).

The complaint was filed in December 1989 and amended to add additional plaintiffs in February 1990. In March 1990, all defendants except the law firm defendants filed motions to dismiss the amended complaint on various grounds. The trial court stayed discovery, but, for reasons unexplained, did not rule on the motions to dismiss until July 1996. At that time, it rejected many of the various defendants' defenses, but, relevant to the present appeal, the court dismissed all claims against Touche Ross. On August 7, 1996, plaintiffs voluntarily dismissed all remaining claims against the other defendants, rendering the judgment against Touche Ross final for appeal.

**The District Court's Ruling**

The amended complaint alleged that Touche Ross participated in the defendants' fraudulent scheme by providing accounting, auditing, and financial analysis in preparation of the offering memorandum. In particular, as the district court set out, plaintiffs pled (1) that Touche Ross had been retained to recommend internal controls and that it stated that it would conduct audits of the limited partnerships; (2) that it failed to disclose that one of the principals, David Greenberg, was a convicted felon and that his twelve-year-old son was the sole officer, director, and shareholder of one of the corporations, and that it failed to disclose inflated invoices, an insurance fraud scheme, and that managing principals had attempted to deter plaintiffs from pursuing their legal remedies; (3) that Touche Ross prepared financial projections that were attached as exhibits to the offering memoranda; (4) that Touche Ross "aided and abetted" the other defendants in their fraudulent schemes.

were dismissed for lack of independent federal

First, the district court found that the statement that Touche Ross had recommended certain internal controls and that it would assist management in implementing future internal controls was prepared by management, not Touche Ross. Although the plaintiffs urged that they had alleged that Touche Ross had made "false statements" in that regard, the district court relied on plaintiffs' own assertion "that the accountants acquiesced in permitting the use of a statement that Touche Ross had agreed to perform internal controls, management reporting, and internal audits." In addition, the court found that these allegations contained a statement of future conduct which was not actionable under § 10(b).

Next, the district court dealt with the plaintiffs' allegations that Touche Ross had performed financial projections that were attached to the offering memoranda. The court pointed out that the charge failed to allege specifically how the defendants violated § 10(b), but that it read the complaint as a whole as stating that Touche Ross's financial projections contained material misrepresentations and omissions. The court stressed that Touche Ross did not issue an opinion or certification as to the prospectus. Attached to each of the projections that Touche Ross issued was a letter which stated that the projection was based on management's "knowledge and belief" and cautioned that the projection "does not include an evaluation of the support for the assumptions underlying the projection." On this basis, the court found that the cautionary language "clearly bespeaks caution." The court found that under *Luce v. Edelstein*, 802 F.2d 49, 56 (2d Cir.1986), plaintiffs could not have reasonably relied on the financial statements.

Finally, the court addressed plaintiffs' allegations that Touche Ross was under a duty to disclose the fact that one of the principals was a convicted felon, that his twelve-year-old son was the sole officer of one of the corporations, that there was misappropriation by the various principals, that there were fraudulent invoices used, that there were fraudulent claims made against insurance companies, and that Touche Ross failed

jurisdiction.

to disclose defendants' fraudulent conduct to deter plaintiffs from pursuing their legal remedies. The trial court rejected these allegations on the ground that Touche Ross had no duty to plaintiffs to disclose this information, citing *Chiarella v. United States,* 445 U.S. 222, 100 S.Ct. 1108, 63 L.Ed.2d 348 (1980).

### Discussion

■ Based upon our review of the overall record and briefs, we find no error in the district court's appraisal of plaintiffs' complaint. We thus find no error in the district court's dismissal of plaintiffs' complaint under Federal Rule of Civil Procedure 12(b)(6). In due respect to plaintiffs, it must be acknowledged that the complaint was filed before the Supreme Court decided *Central Bank v. First Interstate Bank,* 511 U.S. 164, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994). Under *Central Bank,* secondary liability for "aiding and abetting" no longer is a basis for a § 10(b) claim. *Id.* at 191, 114 S.Ct. at 1455. The Supreme Court held that common-law principles could not be used to interpret § 10 and that aiding and abetting claims are not within the scope of § 10(b).

This circuit's post-*Central Bank* case of *SEC v. First Jersey Sec., Inc.,* held the president of a brokerage firm primarily liable for orchestrating the manipulative acts of multiple branch offices in the sale of securities at excessive prices. 101 F.3d 1450, 1471–72 (2d Cir.1996), *petition for cert. filed,* 65 U.S.L.W. 3799 (U.S. May 23, 1997) (No. 96–1862). Some district courts within this circuit have strictly applied the holding of *Central Bank.* For example, in *In re MTC Elec. Techs. Shareholders Litig.,* 898 F.Supp. 974, 987 (E.D.N.Y.1995), the district judge concluded:

[I]f *Central Bank* is to have any real meaning, a defendant must actually make a false or misleading statement in order to be held liable under Section 10(b). Anything short of such conduct is merely aiding and abetting, and no matter how substantial that aid may be, it is not enough to trigger liability under Section 10(b).

*See also In re JWP Inc. Sec. Litig.,* 928 F.Supp. 1239, 1255–56 (S.D.N.Y.1996) (dismissing misrepresentation claims against audit committee defendants where those defendants did not actually make the misrepresentations). Similarly, the Tenth Circuit observed:

Reading the language of § 10(b) and 10b–5 through the lens of *Central Bank of Denver,* we conclude that in order for accountants to "use or employ" a "deception" actionable under the antifraud law, they must themselves make a false or misleading statement (or omission) that they know or should know will reach potential investors. In addition to being consistent with the language of the statute, this rule, though far from a bright line, provides more guidance to litigants than a rule allowing liability to attach to an accountant or other outside professional who provided "significant" or "substantial" assistance to the representations of others.

*Anixter v. Home–Stake Prod. Co.,* 77 F.3d 1215, 1226–27 (10th Cir.1996).

We construe plaintiffs' complaint against Touche Ross as primarily alleging aiding and abetting the principal defendants. Allegations of "assisting," "participating in," "complicity in" and similar synonyms used throughout the complaint all fall within the prohibitive bar of *Central Bank.*[2] A claim

---

**2.** In pre-*Central Bank* cases, some courts did not distinguish precisely between primary liability and aiding and abetting liability. *See, e.g. Akin v. Q–L Inv., Inc.,* 959 F.2d 521, 526 (5th Cir.1992) (holding accountant may be liable even though false statement is not his own); *Rudolph v. Arthur Andersen & Co.,* 800 F.2d 1040, 1044 (11th Cir.1986) (holding accounting firm potentially liable primarily *and* as aider and abettor by "[s]tanding idly by while knowing one's good name is being used to perpetrate a fraud . . ."); *see also Roberts v. Peat, Marwick, Mitchell & Co.,* 857 F.2d 646, 652–53 (9th Cir.1988). Other cases preceding *Central Bank* accurately predict-

ed the holding of *Central Bank. See DiLeo v. Ernst & Young,* 901 F.2d 624, 629 (7th Cir.1990) (holding accountants owe no duty "to search and sing"); *Farlow v. Peat, Marwick, Mitchell & Co.,* 956 F.2d 982 (10th Cir.1992) (affirming dismissal despite allegations that accountant certified client's financial statements that accountant knew were to be false). *See also* Robert A. Prentice, *Locating that "Indistinct" and "Virtually Nonexistent" Line Between Primary and Secondary Liability Under Section 10(b),* 75 N.C. L.Rev. 691, 760 (1997) (noting that before *Central Bank,* "the duty to blow the whistle on a client . . . was definitely a minority view," and

under § 10(b) must allege a defendant has made a material misstatement or omission indicating an intent to deceive or defraud in connection with the purchase or sale of a security. *McMahan & Co. v. Wherehouse Entertainment, Inc.*, 900 F.2d 576, 581 (2d Cir.1990).

The plaintiffs seek to reconstruct their complaint by urging that they have made allegations that Touche Ross directly made a "material misstatement" and "omission" "in formulating and designing the private placement memoranda (including projections)." The plaintiffs essentially argue that the district court erred in applying the "bespeak caution" doctrine because Touche Ross knew that its projections were fraudulent and misleading. However, as the district court perceived, the claims are based primarily on the defendants' failure to disclose that David Greenberg—one of the principals—was a convicted felon; there exists no allegation that the projections misrepresented any financial fact. The plaintiffs' brief charges repetitively that the private placement memoranda "was a smoke screen designed to hide the [fact that] investment proceeds were to be placed at the mercy of a person who had been convicted and imprisoned for fraud." There is no allegation of a fraudulent misstatement in the projection itself.

We believe the district court correctly rejected this claim on the basis that Touche Ross cannot be liable for failure to disclose material information under § 10(b) unless it was under a duty to do so. *See Chiarella*, 445 U.S. at 228, 100 S.Ct. at 1114 ("[T]he duty to disclose arises when one party has information 'that the other [party] is entitled to know because of a fiduciary or other similar relation of trust and confidence between them.'").

In another post-*Central Bank* case, a district court observed:

> The concept of a duty to disclose appears to stem from the extent of reliance on the accountant's work made by the public and the expectations of the public. Clearly, in a situation in which the accountant "gives an opinion or certifies statements" about a

company—statements which the accountant later discovers may not have been accurate ...—then the accountant has a duty to disclose the fraud to the public....

> Conversely, if an accountant does not issue a public opinion about a company, although it may have conducted internal audits or reviews for portions of the company, the accountant cannot subsequently be held responsible for the company's public statements issued later merely because the accountant may know those statements are likely untrue.

*In re Cascade Int'l Sec. Litig.*, 894 F.Supp. 437, 443 (S.D.Fla.1995)

Plaintiffs' argument is best summarized in its statement that the Touche Ross defendants were in complicity throughout with the principal defendants. This assertion of aiding and abetting does not support a claim under § 10(b) as interpreted by the *Central Bank* Court. Plaintiffs rely on pre-*Central Bank* cases which are no longer controlling.

We agree that an accountant shares in an insider's duty to disclose if the accountant exchanges his or her role for a role as an insider who vends the company's securities. However, while the plaintiffs allege that all of the defendants, including Touche Ross, originally "developed a plan to sell" interests in Video USA, the district court read the amended complaint as limiting Touche Ross's involvement to preparing the financial projections that were later included in the principal defendants' offering memoranda. *Pahmer v. Greenberg*, 926 F.Supp. 287, 306–07 (E.D.N.Y.1996).

The district court did not misconstrue the amended complaint. Liberally reading the complaint does not require ignoring specific factual allegations in order to broadly read sweeping equivocal assertions. Indeed, we reach the same conclusion the district court reached by considering the allegations in context. The amended complaint first generally alleges that the principal defendants "together with" all other defendants "developed a plan to sell" interests in Video USA. Am. Compl. at ¶ 155. It next vaguely explains

opining that *Central Bank* marked "the end of any free-standing duty by collateral participants

in securities transactions to blow the whistle ...").

the roles played in the alleged plan, asserting that certain principal defendants organized the limited partnerships "with the willing participation and active aid and assistance" of Touche Ross. *Id.* at ¶ 156. All defendants are then together accused of making "representations [in the placement memoranda] intended to induce" investments without disclosing David Greenberg's conviction or that his minor son was the only director and shareholder of one of the limited partnerships. *Id.* at ¶ 157. The amended complaint finally alleges Touche Ross's particular involvement by maintaining that all defendants caused the mailing of the placement memoranda, "which included financial projections provided by Touche Ross." · *Id.* at ¶ 159.

We draw the only reasonable conclusion from these assertions: the plaintiffs' amended complaint alleges that Touche Ross's specific "participating" role in selling interests in Video USA was only in providing the financial projections that were included with the offering memoranda. Because this is consistent with the role of an accountant,[3] and because the plaintiffs otherwise fail to articulate a "fiduciary or other similar relation of trust and confidence" between themselves and Touche Ross, we hold Touche Ross had no duty to disclose David Greenberg's criminal conviction or that his minor son was named the only officer of a limited partnership with management authority within Video USA.

In sum, we find the district court did not err in dismissing plaintiffs' complaint against the Touche Ross defendants.

**Leave to Amend**

■ Plaintiffs contend that the district court abused its discretion by denying plaintiffs' motion to amend its complaint. Plaintiffs submitted, without court approval, an affidavit of a former Touche Ross accountant and named defendant Martin Cianciaruso. The affidavit allegedly set forth a factual basis to support plaintiffs' claim that Touche Ross directly participated in the limited part-

nership misstatements by preparing the offering memoranda.

■ Although a district court should freely give leave to amend a complaint, *see Gary Plastic Packaging Corp. v. Merrill Lynch, Inc.,* 756 F.2d 230, 236 (2d Cir.1985), we hold that the district court here did not abuse its discretion in denying plaintiffs' motion to replead. Plaintiffs acknowledge that they did not submit the Cianciaruso affidavit until two months after the hearing on this matter, and they do not dispute Touche Ross's account that they submitted the late affidavit without attempting to meet the requirements for late filing under Rule 6 of the Federal Rules of Civil Procedure.

Rule 6(d) establishes that "[w]hen a motion is supported by affidavit, the affidavit shall be served with the motion." The rule further provides that "opposing affidavits may be served not later than 1 day before the hearing, unless the court permits them to be served at some other time." Whether we treat the Cianciaruso affidavit as submitted in opposition to the defendants' motions to dismiss, as suggested by Touche Ross, or as submitted in support of the plaintiffs' request to amend, as it appears more appropriate, the plaintiffs' affidavit was not received by the district court. It is not part of the official record on appeal. Thus, the district court did not abuse its discretion in ignoring the affidavit, or by denying the motion to amend as futile.

As the district court could not consider the untimely affidavit without a proper motion, *see Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 896, 110 S.Ct. 3177, 3192, 111 L.Ed.2d 695 (1990) (applying Fed.R.Civ.P. 6 and noting that "any *post* deadline extension *must* be 'upon motion made'") (emphasis added), we likewise do not consider the affidavit. *Id.* at 894, 110 S.Ct. at 3191 (holding the court of appeals erred in relying on affidavits not admitted by the district court); *see also Figgie Int'l, Inc. v. Bailey,* 25 F.3d 1267, 1273 n. 21 (5th Cir.1994) (citing *Lujan* as barring appellate court from enlarging the

---

**3.** In *IIT v. Cornfield,* we held that while an accountant's role may create a duty to disclose errors in financial statements, an accountant has no duty to disclose improper loans and invest-

ments since these wrongs are "not dependent on or tied to" the role of an accountant. 619 F.2d 909, 925 (2d Cir.1980).

record on appeal with affidavits excluded in the district court). Beyond these assertions the plaintiffs have not discussed how they would amend the complaint to cure its deficiencies. In short, the plaintiffs have not shown facts or circumstances that would support a claim for relief even if allowed to amend. We therefore sustain the district court's denial of the motion to amend.

**Conclusion**

We agree with the district court that the amended complaint fails to state a claim against Touche Ross for violating § 10(b). We hold that the district court also did not abuse its discretion by denying the plaintiffs' request to replead their § 10(b) and RICO claims. Accordingly, the judgment of the district court is affirmed.